IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW YORK.

IN JANUARY TERM, 1837, IN THE SIXTY-FIRST YEAR OF THE INDEPENDENCE OF
THE UNITED STATES.

---

## DOANE *vs.* EDDY.

A *mortgage of personal property* is fraudulent as against the creditors of the
mortgagor, where there is not an immediate delivery followed by an actual
and continued *change of possession*, although the mortgage be made in good
faith and without any intent to defraud, unless the continued possession in
the mortgagor is satisfactorily explained.

In this case it was held that the continued possession of a mortgagor was not
so explained, by showing that he was a *traveling* or *missionary preacher of
the gospel*, and that the use of the property mortgaged (a horse) was neces-
sary to enable him to pursue his vocation; and that upon such evidence it
was the duty of the court to *nonsuit the plaintiff*, and not to submit the
question of *fraudulent intent* to the jury; Justices BRONSON and COWEN
holding this opinion, and the CHIEF JUSTICE dissenting.

The distinction which heretofore existed between an *absolute sale* and a *mort-
gage of goods* is abolished by the revised statutes.

Where a defendant sued here justifies the taking of property in a sister state,
under an attachment issued there, he is bound, *it seems*, to show that the
process issued conformable to the laws of the place. The omission to give
such proof cannot, however, be objected in bank, if the question was not
raised at the trial.

THIS was an action of *trover* for a mare, tried at the Wash-
ington circuit in June, 1834, before the Hon. ESEK COWEN,
then one of the circuit judges.

To prove title to the property, the plaintiff gave in evidence a *mortgage* executed by *Julius Doane*, dated August 8, 1832, conveying to him the mare, with other goods and chattels. The mortgage recited that the plaintiff had signed a note with and as the surety of the mortgagor, to one *Silas Hall*, for the sum of $175, payable 8th August, 1833, and that the mortgagor, from his then embarrassments, was apprehensive that he would not be able to pay the note at maturity. The mortgage purported to be made for the plaintiff's indemnity. The mortgagor was to retain possession of the property, and to use the same in a prudent and discreet manner, until the note would fall due. If he paid the note, indemnified the plaintiff and saved him harmless, the mortgage was to be void; if not, the plaintiff was authorized to take the property into his possession as his absolute property. It was also provided, that if the mortgagor should at any time before the note fell due, sell or assign the goods, or any part thereof, or if the same or any part thereof should be taken from him, by execution or otherwise, within the time, the mortgage was to be deemed forfeited, and the plaintiff's right was to become absolute. The plaintiff and *Julius Doane*, at the time the mortgage was executed, resided at *Granville*, in this state. The mare had been owned and possessed, for several years, by the mortgagor, who, four or five months after the date of the mortgage, removed to Clarendon, in the *state of Vermont*, taking the mare with him. Some of the property mortgaged was left on the plaintiff's farm. The mare was taken in July, 1833, at Middletown in Vermont, by a constable, by virtue of an attachment issued by a justice of the peace at the suit of the present defendant, on a note for $36 76, given by Julius Doane to the defendant, bearing date 8th January, 1833, payable one day after date. The defendant, with full knowledge of the existence of the mortgage, directed the mare to be attached, and she was afterwards sold to pay the debt. The attachment was produced by the plaintiff's witness, who was called to prove the taking by the defendant. The plaintiff rested and the defendant moved for a nonsuit. The plaintiff, for the purpose of showing the mort-

gage to be valid, offered to prove that the note of $175 to *Hall* was given on a loan of that sum to *Julius Doane*, and that Hall refused to make the loan, unless the plaintiff, the brother of *Julius*, would also sign the note ; that the plaintiff consented to become surety on receiving the mortgage for his indemnity ; that *Julius* had the money, and that the plaintiff had paid and taken up the note at maturity ; that the mortgage was executed for the honest purpose of indemnifying the plaintiff, and was a matter of public notoriety ; that *Julius* was a minister of the gospel, not settled, but a traveling preacher or missionary, and required the use of the mare to enable him to pursue his vocation, support himself, and provide the means of redeeming the property mortgaged. The judge decided that this evidence, if given, would not vary the result, and nonsuited the plaintiff, on the ground that the mortgage was fraudulent, as against the creditors of *Julius Doane*, the possession of the property not having been changed, but remaining with the mortgagor. The plaintiff moved to set aside the nonsuit.

*J. Holmes*, for the plaintiff.

*S. Stevens*, for the defendant.

The following opinion was delivered by Mr. Justice BRONSON, in which Mr. JUSTICE COWEN concurred. The CHIEF JUSTICE dissented.

BRONSON, J. Some of the questions discussed on the argument do not properly arise in the case. It does not appear that the plaintiff made any objection that the defendant had not proved himself a creditor of *Julius Doane*, or that the property had not been regularly taken on attachment, issued pursuant to the laws of the state of *Vermont*. The plaintiff himself gave in evidence the note which *Julius Doane* had given to the defendant, and also produced the attachment for the purpose of showing the taking of the property by the defendant. If he had afterwards objected that the defendant could not justify the taking without show-

ALBANY,
Jan. 1837.

Doane
v.
Eddy.

ing that the attachment was issued according to law, it would probably have been incumbent on the defendant to give further evidence. *Jenner* v. *Joliffe,* 6 Johns. R. 9. But it is against well settled principles to allow a party to take an objection here, which if made at the circuit might have been obviated.

Was the mortgage fraudulent as against the creditors of *Julius Doane?* This is the only question in the case. For the purpose of deciding it, the evidence offered and rejected must be regarded as actually given. The plaintiff became a surety for his brother, and took the mortgage for his indemnity. He paid the debt of the principal when it fell due. The property was left in the possession of the mortgagor, and he continued to possess and use it for about eleven months, when it was taken on the attachment. The reason for leaving the mare with the mortgagor was, that he was a traveling preacher or missionary, and the use of the property was necessary to enable him to pursue his vocation, support himself, and provide the means of redeeming the property mortgaged. Are these reasons sufficient to take the case out of the operation of the rule, that possession by the mortgagor is presumptive evidence of fraud as against creditors? The high vocation of the mortgagor can have no legal influence upon the question, The enjoyment of the property was convenient if not absolutely necessary, in the pursuit of his calling. Such must also be the case with the farmer, the mechanic, or the tradesman, who finds it necessary to mortgage his implements of husbandry, the tools of his trade, or the wares in which he deals. In a question of this kind, the law pays no regard to any particular class or condition of men, but the same rule is applicable alike to all. The question then is, whether it be a sufficient reason for *leaving personal chattels* in the possession of the mortgagor, that the use of the property is necessary in his business or calling, or as the means by which he is to obtain his support?

I shall not go into an examination of the numerous cases in the books upon this most fruitful subject of legal controversy. Many of them were reviewed by the late chief justice, in *Hall* v. *Tuttle,* 8 Wendell, 375. Possession in

the vendor of personal chattels, after a sale or conveyance, has always been deemed *prima facie* evidence of fraud as against creditors and subsequent purchasers; and if not satisfactorily explained, it always amounted to conclusive evidence of fraud. The burden of proving the transaction *bona fide*, and showing some sufficient reason for continued possession in the vendor, rested on the person claiming under the conveyance. *Sturtevant* v. *Ballard*, 9 Johns. R. 337. *Jennings* v. *Carter*, 2 Wendell, 446. *Collins* v. *Brush*, 9 id. 198. A distinction was formerly taken between *an absolute sale* and a *mortgage* of goods; and in the latter case, if the possession of the vendor was consistent with the face of the deed, such fact has sometimes been held to take the case out of the operation of the rule which has been mentioned. The case of *Barrow* v. *Paxton*, 5 Johns. R. 258, turned upon this distinction; and *Bissell* v. *Hopkins*, 3 Cowen, 166, arose upon a mortgage, and not an absolute sale of personal chattels. But this distinction no longer exists. The new statute has placed all sales and conveyances of goods, whether absolute or by way of mortgage, and upon whatever condition they may be made, on the same footing. It is no longer of any importance that the possession of the vendor is consistent with the deed. Unless the conveyance, whatever may be its form, is accompanied by an immediate delivery, and followed by an actual and continued change of possession, the statute declares that the transaction shall be *presumed* fraudulent and void as against creditors; and the evidence of fraud will be conclusive, unless the person claiming under the conveyance shows that the same was made in good faith, and without any intent to defraud creditors. 2 R. S. 136, § 5.

There is some difficulty in laying down any general rule as to what shall be deemed a sufficient reason for the non-delivery of the goods, where every thing else is fair and *bona fide*. In *Collins* v. *Brush*, the property was taken in execution after the new statute had gone into operation, though the bill of sale was executed before. The plaintiff became the endorser for one *Ayres*, in the sum of $180; and after protest, paid and took up the draft. *Ayres* gave

the plaintiff, for his indemnity, a bill of sale of a pair of burr mill-stones and a quantity of oak timber lying at his mill. After the execution of the creditor was issued, but before it was levied, the plaintiff employed one *Downs* to take charge of the property, and he piled the lumber, but did not remove the mill-stones, having obtained the permission of *Ayres* to let the stones and the lumber remain at the mill. It was held that the plaintiff could not recover against the judgment creditor who had taken the goods on execution; that although the sale was upon a valuable consideration, no sufficient reason had been shown for leaving the property in the possession of the vendor. This is, I think, a stronger case than the one now before the court. It was a sale of ponderous articles, where there could not be an immediate change of possession; but three or four months had elapsed after the sale without any actual delivery, and yet the transaction was held fraudulent and void as against creditors. The case of *Gardner* v. *Adams*, 12 Wendell, 297, also arose under the new statute. It was upon a mortgage of personal property, which was left in the possession of the mortgagor *for his accommodation*. The sale was held fraudulent and void. The late *Chief Justice* remarked that the reason for leaving the property in the hands of the mortgagor—*his accommodation*—might be assigned in every case; and if held sufficient, the burden of proving fraud would be thrown on the plaintiff: whereas the statute intended that those concerned in such a transaction should be obliged to prove it not only done upon good consideration, but free from all intention of defrauding any one, or defeating any creditor in the collection of his debt.

In the case under consideration, the possession of the mare was not changed, for the reason that the use of the animal was convenient, if not necessary, in the business or calling of the mortgagor. The excuse for the non-delivery is of the same character with that which was assigned in the case of *Gardner* v. *Adams;* the mortgagor was left in possession *for his accommodation*. If this should be held a sufficient reason, the legal presumption of fraud, arising

out of the fact that the goods were not delivered, would be of little value. It would always be enough for a man to produce his mortgage, prove a good consideration, and show that the possession of the property was necessary to the business or occupation of the vendor. The latter fact could always be made out, for men rarely, if ever, execute mortgages on their personal property when they can conveniently part with it. The mortgage usually covers property which the party is unwilling to sell and deliver; it is necessary in his business, or for his support.

Where there is a sale or mortgage of ponderous articles, a reasonable time must be allowed for removing the goods; and growing crops are not susceptible of an immediate and actual delivery. Besides these, there may undoubtedly be others cases were the continued possession of the vendor can be satisfactorily explained, so as to repel the legal presumption of fraud. But where the property is of such a nature that there might be an immediate change of possession, it is not enough that the vendor needed the use of the goods. Something more must be proved, or the presumption of fraud will still remain.

It is objected that the question of fraud should have been submitted to the jury, and that the judge erred in ordering a nonsuit. There was no conflict of evidence; no dispute about facts. No sufficient reason was assigned for the non-delivery of the property. If the question of fraud had been submitted to the jury and they had found for the plaintiff, we should have been obliged to set aside the verdict. In such a case, it is proper for the judge at the circuit to order a nonsuit. 1 Wend. 376. 6 Wend. 436. 14 Wend. 146.

The *Chief Justice* dissented, and delivered the following opinion:

I am inclined to think the question of fraudulent intent was a question of fact, and should have been put to the jury. The continued possession of the horse after the givning of the mortgage, was presumptive evidence of fraud by

operation of the statue, 2 R. S. 136, § 5; and the *onus* of disproving it lay upon the plaintiff; he might show, if he could, that the mortgage "was made in good faith, and without any intent to defraud such creditors or purchasers," by the very terms of the act; and then it would be valid. *Id.* This he proposed to do; for he offered to prove a state of facts which fairly tended to repel all idea of a fraudulent design; whether it did so effectually or not, I apprehend was not a question of law, but of fact, and belonged to the jury. Is the court to pass upon the *good faith* of the transaction, or whether an *intent to defraud creditors* did or did not exist in the minds of the parties at the time? It is declared, § 4, p. 137. "The question of *fraudulent intent, in all cases* arising under the provisions of this chapter, shall be deemed a *question of fact,* and *not of law,*" § 5, p. 136, is in the same chapter of which § 4, p. 137, is a part, and of course the *fraudulent intent* referred to in § 4, means the *intent to defraud* mentioned in § 5.

The possession in the mortgagor or vendor, is all that need be shown, in the first instance, by the creditor contesting the validity of the transaction, and that being shown, the statute presumes the mortgage fraudulent; but when all the facts and circumstances attending the transaction, and which disclose its real nature and character, are brought out by the mortgagee, must not the jury pronounce upon the good faith, and absence of any fraudulent intent which the statute says may be urged by way of repelling the presumed fraud? Should the court pass upon the facts, declaring a fraudulent intent or not, as the case may be? What state of facts must exist in a case, to require a submission of them to the jury?

New trial denied.