Cowen, J.
The cause was put to the. jury on the ground of possession continuing in the mortgagor; and the question is, therefore, the same in effect as if there had been actual proof tending to show that the bond and mortgage were given to secure a true debt. There was no change of possession, nor any excúse expressly set up for not changing it. It was however obviously for the convenience of Davids to keep possession, and it might have helped him in his business.
The judge was clearly right, according to the decisions of this court, and the uniform current of judicial authority from Twyne's case, (3 Rep. 80,) in the reign of Elizabeth, down to but not including Smith & Hoe v. Acker, decided by the court for the correction of errors in December term, 1840. (23 Wend. 653.) Several cases are before us on possession of goods by insolvent debtors after a bill of sale or mortgage, both being, as is well known, placed by our statute on the same footing in respect to the evidence of fraud derivable from such possession. Some of these cases were argued or submitted before and some since the decision by the court of errors, which is now urged upon us as subverting the ancient doctrine of the courts, by requiring the question of fraud to be submitted to the jury, and malting their decision final and conclusive in all cases. I have accordingly *441 looked into that case, and am of opinion that it has not been materially misunderstood by counsel who contend upon it for the absolute power of the jury. This, I think, will be obvious from a brief review of it; and, at any rate, it will be clearly seen that it was considerably stronger in favor of the execution creditor than the one now before us. Yet the court of errors forbade the interference of the judge, and said the case belonged to the jury.
In that case the plaintiffs, Smith &. Hoe, claimed as mortgagees of a valuable printing apparatus (presses, types, &c.) in the city of New-York, where both parties resided. The mortgage was executed by one Bell, an insolvent debtor, and included also his household furniture at two houses in the city. It was professedly taken to secure a debt of $10,000. The whole was described in a schedule attached to the mortgage, without any value being affixed; and no appraisal was made at the time, though a witness stated that he afterwards estimated the printing materials at $10,000. No estimate appeared to have been at any time set on the furniture; and some of it was described as consisting of lots or parcels. The money was professedly secured to be paid in about one month. The mortgage was filed. It contained a covenant that, till default in payment, the whole should remain in the possession and enjoyment of the mortgagor. The apparatus remained in his office and the furniture at his houses in the city, (though, as alleged, he had paid none of the money said to be due,) till some time in January, 1838, when the sheriff levied on one of the printing presses to satisfy an execution for a small debt due to Mr. Voorhis. -A witness stated that had a sale of the apparatus been forced at auction in the meantime, it would not have brought 20 per cent, of its real value; and that Bell was allowed to retain possession, and was assisted in his business by the plaintiffs, in the hope that he might be enabled to pay his creditors. Business was in the meantime dull; and Bell was sick in the summer and fall, and when the sheriff came to "levy. No reason whatever was given for leaying the furniture with Bell, which was appa *442 rently valuable and equal to a handsome domestic establishment in the city, allowing not only for a scale of convenience, but elegance. Parol evidence was given of á balance on book account in favor of the mortgagees, against Bell, of about §10,000; and it was claimed that the mortgage had been given to secure this balance.
The cause was tried on these facts, in the New-York common pleas, where the mortgagees had brought replevin against the sheriff. At the close of their evidence before the jury, that court thought the transaction such a palpable device to delay, hinder, or defraud Bell’s creditors, that they refused to submit the case to the' jury; and nonsuited the plaintiffs. On error to this court we thought the court below were clearly right and affirmed the judgment. Our judgment was reversed by the court of errors, which held that the question was one of actual fraud for the jury.
It will be perceived, that here was such a possession by the mortgagor as the statute (2 R. S. 70, 2d ed. tit. 2, § 5,) declares to. have been presumptively, indeed conclusively fraudulent and void as against the levying creditor, unless it was shown on the fart of the flaintiffs that their mortgage was made in good faith, and without any intent to defraud creditors. ' The fourth section of the next title declares, that the question of fraudulent intent in such case is one of fact and not of law. A brief examination of the principle and history of our decisions under these statutes, will exhibit more clearly the difference .between the construction which we have placed upon them, and that adopted by the court of errors..
We understood the' statutes, not as narrowing and weakening, but rather as extending and strengthening the rules of evidence which had before been adopted for the detection and suppression of fraud. Section one, of title three, is- a re-enactment of the 13 Eliz. Section five, of title two, puts absolute bills of sale and mortgages of goods on the same footing, declaring that both shall be presumptively fraudulent, and conclusively so unless proved to have been made in good faith and without any intent to defraud.
*443 The case cited from 3 Rep. 80, arose under 13 Eliz. on a sale to Twyne in satisfaction of a debt, the vendor being indebted to others, and continuing in possession, as Bell had done in Smith & Hoe v. Acker. All the judges of England resolved, (p. 81,) that notwithstanding here was a true debt due to Twyne, and a good consideration of the gift, yet it was not bona fide ; for no gift shall be deemed to be bona fide which is accompanied with any trust, as if the donee allow the donor to continue in possession, &c. The rule of this case having long prevailed, and having been extended, as we understood the revised statutes, to mortgages as well as sales, we held in both instances, that the proof of a true debt taken by itself did not tend to shew that the sale or mortgage was bona fide. We required, in addition, that some extraordinary reason should be shown for the continuance of possession; and not merely such as may always be set up and established by a wary insolvent, and his mortgagee or vendee; and that if something more were not shown, proof of a real consideration came short of the mark, and amounted to nothing. We proceeded on the ground deduced by Mr. Roberts, from Twyne’s case,' viz: “ That evidence of the fraudulent intent supersedes the whole inquiry into the consideration; for no merit in any of the parties to a transaction can save it, if it carry intrinsically or extrinsically the plain characters of fraud.” (Roberts on fRaud. Conv. 548.) Twyne’s case specifically denied all force to one very common excuse. At p. 81, the report declares, that a sale leaving the goods with the vendor with intent to favor him, being content that he should pay the .debt when he got able, should not be deemed bona fide. Accordingly, an excuse that the goods were left for the accommodation or convenience of the insolvent vendor, has been repeatedly disallowed. (Gardner v. Adams, 12 Wendell, 297. Doane, v. Eddy, 16 id. 253. Randall v. Cook, 17 id. 53.) So, that he retained the use and possession to enable him the better to pay the debt due the mortgagee. (Beekman v. Bond, 19 Wendell, 444.) The principle of these decisions was, as *444 already mentioned, that the excuses were such .as could be manufactured by the parties at pleasure, and always would be. These and the like reasons for retaining possession can always be proved. Most of them are self-evident; and if not, the parties can express and make a show of them at the time, and so prove them by witnesses. Being matters by which they may always cover and disguise the transaction, we thought them of no force, and not such evidence as should go to the jury. In this we proceeded on the rule that though a question be one of fact, yet whether the evidence offered may tend to its elucidation, is always a question of law for the judge.
Having thus noticed the principles on which our decisions proceeded, it becomes necessary to inquire how far they were overruled by the court for the correction of errors in Smith Hoe v. Acker. The excuses set up by Bell’s mortgagees were of a character which the parties to an insolvent’s mortgage may always bring into the case and make out in proof; and if such are fit to be submitted to a jury, as relevant evidence, it follows that every other excuse within the power of the parties to invent must also be deemed relevant. The presiding judge has no discretion; but is bound to submit the alleged excuse to the jury as a part of the evidence to be considered and allowed or disallowed by them, as they shall think meet. The line which has heretofore been maintained in this respect between the relevancy and the weight of evidence has been obliterated; and both have been confided to the jury. The court for the correction of errors held this anomaly as matter of construction on the declaration of the fourth section of title three, that the question is one of fact and not of law. Senator Hopkins, who delivered the only opinion in that case coming fully up to the principle which alone can be considered as governing the decision, in speaking of this provision, said it- seemed Unnecessary to look into the previous state of the law. He admitted that the onus probandi was thrown upon the persons claiming under the sale or mortgage. But in his enumeration of the matters tending to discharge *445 that onus, I find much alluded to as admissible which had not been deemed so under the previous state of the law; but nothing specifically which the judge would be authorized to reject as irrelevant. Indeed in looking through the evidence and considering it in the light of any judicial rule for weighing it which I remember to have seen laid down before, I have been at a loss to find an excuse that the mortgagees could have set up, which did not rather tend to increase the presumption against them already raised by the statute.
The two prominent excuses seem to have been, 1. That Bell was insolvent, and, by keeping his property, he would the better be enabled to pay his debts; and 2. That a forced sale at auction would have brought less for the property. The former reason had no application to the valuable household furniture; and if allowed by the law on the ground that the mortgagor might make a profit by keeping his tools and implements of business, and so possibly pay his creditors some time or other, that would go to save every insolvent’s property for his own use. The excuse would always be true at the time, and might continue to be so during his whole life. Bell and his mortgagees might as well have agreed on a credit and possession for years, and extended the time still for years beyond the day of payment. That a forced sale would have brought less than a leisurely one, is equally applicable to all property. But that was an argument rather for than against a change of possession. A change would have enabled the mortgagees more readily to exhibit the property, and seek opportunities for an advantageous sale, which the mortgage stipulated they might do. That they were occasionally aiding Bell by advances, thus keeping up the balance due on book, and giving him color for opposing the claims of small execution creditors like Yoorhis, was a bad earnest of the pretended purpose to pay debts. The sickness of Bell in the summer and fall, and in January when Yoorhis came with his execution, was also mentioned. But if this excuse were admissible at all, it had. no existence when the mortgage *446 was given, nor when the default in payment was made. In the face of the statute, the mortgagees, so far from the thought of taking the property, actually disqualified themselves from doing so till the first of May, by a covenant that it should remain for the exclusive enjoyment of Bell. From that day they waited till he became sick. He was in a-state of imbecility which they admit called for their farther assistance, and must have sunk him deeper in debt. Independently of sickness, the argument is far from being solid, that a solvent man who in good times with a flourishing business wanted forecast to avoid insolvency, could be entrusted to recover himself by the management of a sinking fund in bad times with a narrowed business and laboring under the distrust of community.
The evidence did indeed tend to show that the mortgage was given at the time to secure a bona fide debt. But even this evidence, which the law has never heretofore regarded as a sufficient explanation when standing alone, was far from being satisfactory. The debt was proved to rest in a book account, which does not appear even to have been produced at the trial. But if the book account had been produced and had shown a debt of exactly $10,000, that would have been far from conclusive. It is very easy for an insolvent and his mortgagee to keep up appearances of a large balance on book or otherwise, whether there be really one or not. A fraudulent mortgage generally assumes a round sum, convenient to cover the property, avoiding to break dollars or even hundreds or thousands; and the only way for creditors to meet the assumption, is on facts like those disclosed in the case before the court of errors.
Without going farther into particulars, it seems to me that, with the single exception of evidence to support.the consideration of the mortgage, the presumption of fraud arising from Bell’s possession, would be considered as rather fortified than weakened, if any of the old rules of evidence were left to us.
In holding that such a case must be submitted to the jury, the court of errors virtually decided that a verdict m *447 favor of the mortgagees could not with propriety have been disturbed by the court' below. If that court had not power to nonsuit, it follows that they could not have granted a new trial, had the jury found a verdict for the plaintiffs. In short, the court of errors must have considered the1 power of the jury as absolute in almost every conceivable case.
The mortgage of Bell was duly filed, according to the requisition of 2 R. S. 71, 2d ed. § 9. But both Senators Hopkins and Edwards expressed a clear opinion that this circumstance did not mitigate the force of the presumption against the mortgagees which would otherwise have arisen under section five. Those opinions accord with the settled doctrine of this court. (Wood v. Lowry, 17 Wendell, 492.) The decision in Smith & Hoe v. Acker, thus being made irrespective of section nine, must therefore be received to govern our judicial action on absolute sales attended with circumstances similar to those in evidence respecting the Bell mortgage. This results from both sales and mortgages being put on the same footing by section five.
Under the construction which the court of errors have thus thought it their duty to give the fourth section of title three, creditors cannot, I think, any longer look for the direct action of this court in deciding on' the usual indicia of fraud. The question must, in almost every case, begin and end in the court of original jurisdiction when it arises on the common law side. I speak not of the court- of chancery. That court is perhaps left to govern itself by the ancient rules. -But it seems to me that where there is a trial by jury, whether at the circuit, in the common pleas, or in a justice’s court, the law must be considered as confiding little if any thing more than a mere advisory control to the presiding tribunal; and that therefore, a review of the question on motion for a new trial, or in any form which presupposes the existence of controlling rules of evidence, is pretty much at an end. Perhaps it is necessary for the vendee or mortgagee claiming in the face of a continued possession in his vendor or mortgagor, to *448 give evidence, slight at least, that the consideration was a true debt. But beyond this, the verdict of the jury must be received as final. The convenience of the vendor or mortgagor, the declared purpose of enabling him to pay debts, even the comfort of his family in retaining household furniture according to their rank in life ; in short, motives of humanity, and almost of mere courtesy, may, I think, on the authority of Smith & Hoe v. Acker, be given in evidence to the jury, who may, if they please, allow them as legitimate excuses. But whether allowed or rejected, the court cannot interfere. This is most clearly so, as I have entirely satisfied myself on examining the circumstances of Smith & Hoe v. Acker ; and my conclusion will, I think, be found as clearly supported by the general scope of Senator Hopkins’ argument ; and by many of his particular expressions. He says, indeed, that the court are to decide questions of relevancy; but he does not, as I before suggested, admit that any one circumstance, before that time held irrelevant, is any longer to be considered so; the case itself shows that it is not; and he expressly mentions several instances in which facts before held to be irrelevant, are no longer so ; such as, that the mortgagor required the property mortgaged in his business, and to aid in his earnings for the payment of debts and the support of his family. And he concludes by saying, the jury must decide the question according to their own convictions as one of actual fraud, It seems to me that the rules cited from Twyne’s case, in Lord Coke’s' reports, and all the decisions following them, down to and including our own, are stricken from existence*, and the question comes nearly, if not quite, to one of actual mental fraud, to be. finally disposed of by the jury. The case before the court of errors was the very strongest which could be presented as a test of the ancient rules, and the learned senator who gave the prevailing opinion, expressed himself as became him, clearly and. strongly. He said at the outset, that his vote would directly conflict with our whole course of decision. It did so; and I feel bound to consider the case of the same force as *449 if the whole court had in terms overruled all our decisions in detail. It virtually says, that in Doane v. Eddy, (16 Wendell, 523,) the jury might have allowed the mortgagor to keep his mare and use her. So in Randall v. Cook, (17 id. 53,) they might have sanctioned the mere wish of the mortgagor and the consent of the mortgagee, that the former should continue the use of the property. So, under the hill of sale and mortgage in Wood v. Lowry, (id. 492.) So, the retaining of the boat by the insolvent mortgagor in Beekman v. Bond, (19 id. 444,) to enable him by its earnings to pay the mortgage debt. So, possession after the sale in Gardiner v. Tubbs, (21 id. 169;) since a mortgage and absolute sale stand on the same footing. Indeed an absolute sale may be made a more effectual instrument of fraud, for it need not be deposited in the clerk’s office, as a mortgage must.- In Gardner v. Adams, (12 id. 297,) a bureau was left with the mortgagor for his accommodation. That was denied to be a sufficient excuse. This case must now also be taken as overruled.
In the case before us, Butler was somewhat shy of avowing his consent to leave the furniture with Davids for his use; but there was no need of his being so. Davids retained it obviously because it' was convenient, and one of the mortgagees consented. Another excuse might have been effectually urged upon the jury, viz. that it enabled Davids the better to carry on his business and earn money to pay his debts. The court of errors hold, in so many words, that the jury may allow either. Bell’s retaining his furniture, was less important. The parallel is more striking between Davids’ furniture and Bell’s printing apparatus, for each was necessary in their respective business. The mere accommodation of the vendor or mortgagor, may now be allowed by the jury as a sufficient excuse.
On the whole, I think the case now before us was disposed of on rules of evidence which were repudiated by Smith Sf Hoe v. Acker ; and my opinion, therefore, is, that there should be a new trial, the costs to abide the event.
Nelson, Ch. J. concurred.