Duer, J., delivered the opinion of the court:
This is an action of replevin, in which the plaintiff seeks to recover certain goods, articles of household furniture, which had been levied upon by the defendant, as a deputy sheriff, under an execution against Theodore Randall, the son of the pDlaintiff That the son was the original owner of the goods, and apparently retained the possession when the levy was made, is not denied; but it is alleged that the plaintiff became the owner by virtue of a bill of sale, executed and delivered to him by his son, on the 12th of May, 1845. The consideration expressed in the bill of sale is $1100, in hand paid. It is not pretended, however, that any cash was then paid, but the son, who was examined as a witness, swore that the true consideration of the sale was the sum of $1100, moneys borrowed from his father in 1845 and 6 ; for $700 of which sum he had given promissory notes, which he produced upon the trial. There was no- evidence, however, that those notes were surrendered to him when the bill ef *71 sale was executed, or that the plaintiff then delivered to him, or had ever delivered to him any receipt or other paper acknowledging the satisfaction of the debt, or explaining the purpose for which the hill of sale was given. The other material facts, ,as they appeared in evidence on the trial, are that the son, who had no funds whatever of his own, on the 6th of March, 1846, hired for one year the house 262 Broadway, and entered there into possession and kept the same for the purpose, as the lease ■expresses, of genteel howling and billiard tables. Some of the furniture, and the greater part of the fixtures, he bought on •credit.
Previous to the execution of the bill of sale, he had been sued for a debt of more than ■ $200, and the plaintiff knew when he took the bill of sale, that an execution upon the judgment recovered for this debt, was about to be issued against him. The plaintiff, who resided at Newark, came to the city on the day the hill of sale was executed, and after or at the time of its execution, the son delivered to him possession of the goods by handing to him the key of the premises. The father then went behind the bar, banded back the key to the son, and appointed him his agent to carry on the business. On the same day the son took down a sign hearing the name of lS‘ Theodore BandaH,” and put up another containing the name of “ BandalP only, and he continued to carry on the business in the same manner he had done before. The only witness present at the sale was a person in the employ of the son as a barkeeper. Another fact, on which the plaintiff’s counsel laid much stress in his argument, is proper to be mentioned. On the 12th of May, the son assigned, to the father his lease of the premises, but as this assignment was made two days before the sale of the goods, it is certain that it was net designed to operate as a transfer of their possession.
The jury found a verdict for the defendant, and we are urged to grant a new trial, upon exceptions taken to the charge of the judge, and to his exclusion of evidence u¡3on the trial.
It is apparent from the statement, that the ease turns upon the construction to he given to those -important provisions in the statute of frauds, which, as all .of ns must remember, were the *72 subject of a protracted and not very amicable controversy between the former supreme court and the court of errors. A controversy that excited the general surprise and regret of the . profession, and for some years kept a branch of the law that bears a more intimate relation than any other to the daily and necessary transactions of life, in a state of distressing uncertainty. The plaintiff’s counsel appealed with confidence to the decisions in the court of errors, as sustaining all his exceptions to the charge of the judge, and whatever may be the treatment those decisions have elsewhere received, we have not the slightest disposition to- deny or evade their authority. We are deeply convinced, without meaning to dwell upon the topic, that there can be no stable or consistent administration of justice, unless the decisions of the court of ultimate jurisdiction shall be implicitly followed and obeyed by all subordinate tribunals; and hence those decisions, when their grounds are distinctly understood,, will always be regarded by us as conclusive evidence of the existing law.
We apprehend, however, that the true import of the decisions how in question, has been greatly misunderstood. We have diligently examined, and we may add, studied the decisions o-f tire court of errors in the cases of Smith & Hoe v. Acker, 23 Wend. 653; Cole & Thurman v. White, 26 Wend. 511; and Hanford v. Artcher, 4 Hill 272; and we are satisfied that the doctrine which they establish is in no degree inconsistent with the opinion we shall proceed to deliver.
The supreme court had decided, in effect, that the presumption that a sale or mortgage of chattels, of which the possession was unchanged, was made with the intent of defrauding creditors, can only be rebutted by positive evidence, that owing to the situation of the parties, or of the goods, the immediate delivery, and actual change of possession which the statute requires, could not be effected; while the court of errors, in reversing their judgments, has held (and such is now the law), that even where. the possession of the goods is intentionally suffered to remain in the debtor, every fact and circumstance, tending to disprove the existence, in fact, of a fraudulent intent, may be given in evidence, and must be submitted to the jury. But the court of *73 errors has not decided that a mere symbolical delivery and constructive change of possession, are sufficient to meet the requisitions of the statute, and exclude the presumption of fraud; nor that the presumption is sufficiently rebutted by proof that the transaction was founded on a good or valuable consideration; nor that the presumption, when not contradicted by proof, may yet be contradicted and overruled by the verdict of a jury ; or, to express our meaning in a few words, the court of errors has not decided that the jury, in the exercise of a plenary discretion, may repeal the statute.
We proceed briefly to explain our own views as to the construction of the statute, and to show their application to the facts of the present case. The first clause in the fifth section (title 2, of the chapter relative to fraudulent contracts and conveyances), our present statute of frauds, so far as it relates to a sale of goods, is in these words: “ Every sale made by a vendor of goods or chattels in his possession or under his control, unless the same be accompanied by an immediate delivery, or be followed by an actual and continued change of possession of the thing sold, shall be presumed to be fraudulent and void, as against creditors or subsequent purchasers in good faith.” Li this clause, the word “ actual” is the most important and significant, and demands a special attention. It is plainly used in opposition to “virtual” or “ constructive.” An actual change, as distinguished from that which by the mere intendment of the law follows a transfer of the title, is an open, visible public change, manifested by such outward signs, as render it evident that the possession of the owner, as such, has wholly ceased. It was the intention of the legislature, that a debtor who wishes to free himself from the imputation of fraud, when he parts with his title to goods, must also part with their use and enjoyment, so as to exclude the hazard of his deriving a false credit from the continuance of his apparent ownership ; and this intention, recommended as it is by the strongest reasons of public policy, we shall endeavor, upon all occasions, faithfully to execute. The construction that we now adopt, was given to the statute by the supreme court in Camp v. Camp, 6 Hill 628, and so far from having been repudiated by the court of errors, it received the foil and emphatic *74 approval of the learned senator, who in Smith v. Acker and Hanford v. Artcher, delivered the opinions that probably had the greatest influence upon the judgment of the court. (Opinion of Hopkins, Senator, 4 Hill 271.)
Applying then the test of this construction to the present case, it is certain, that no evidence was given of such a delivery of the goods and change of their possession as the statute requires. The change was constructive and secret, not actual and apparent. The goods remained in the same house, in the same position, applied to the same uses, and so far as the public had any means of judging, in the possession and under the control of the same person, as owner. The substitution of a sign bearing only the surname “ Eandall,” if intended not to mislead but inform the public, was a pretence and a mockery ; and the delivery of the key, although symbolically a delivery of the goods as between the parties, in respect to creditors, was an idle and unmeaning ceremony. The learned judge, therefore, following the words and in the spirit of the statute, should have instructed the jury that they were bound to presume that the alleged sale, so far as it affected the rights of creditors, was fraudulent and void.
The presumption, however, of a fraudulent intent which the statute creates, is not jwris et de jv/re, but may be contradicted by proof upon the part of those against whom it is alleged. The section we are considering proceeds to say, that the facts upon which the presumption is founded, shall be conclusive evidence of fraud, unless “ it shall be made to appear on the part of the persons claiming under such sale, that the same was made in good faith, and without any intent to defraud such creditors and purchasers.” It must be observed, that the words of the statute are not that if it shall appear to the jury that the sale was not made with an intent to defraud creditors or piu'chasers, they may disregard and overrule the opposite presumption, which the statute adopts. The decision of, the question is not left to their discretion, but the non-existence of a fraudident intent must be made to appear on the part of those who claim under the sale. The meaning of this provision is clear and unambiguous. It casts the burden of proof upon the person who asserts the validity of the sale. It requires him to *75 show affirmatively that the real intention of the parties involved no such fraud as the law imputes to them, since it is manifest that the existence of the fraudulent intent, that otherwise must be presumed, can only be disproved by evidence that the actual intent was fair and honest. We are aware that it has been frequently asserted that when no such evidence as we have stated has been given, the question of a fraudulent intent must still be submitted to the jury, and its determination be left to their uncontrolled discretion. Such, it has been alleged, is the just construction and necessary effect of the fourth section in the third title of the same chapter which declares, “ that the question of fraudulent intent in all cases arising under the provisions of the chapter, shall be deemed a question of fact and not of law.” Our opinion as to the true construction of this section, is widely different. We cannot assent to an interpretation that renders the salutary provisions in the preceding fifth section a dead letter, and virtually expunges them from the statute. It is a contradiction in terms to say that certain evidence when not contradicted, is conclusive, and that the same evidence, although not contr'adActed, may be rejected. Conclusive evidence is that which must be followed; it takes away all exercise of discretion; it establishes the fact it is adduced to prove, and it cannot be rejected by judges or jurors, without a violation of their duty and their oaths. The two sections under consideration, although found in different titles, are parts of the same law, and were enacted at the same time, and it would therefore be unreasonable to suppose that the latter was intended to repeal the former. The fifth section was originally reported by the revisers in a different and more stringent form, and had its repeal been intended, instead of being studiously amended by the legislature, as it actually was, it would have been stricken from the law. The provisions in each section, we are bound to presume, were equally intended to have the force of law, and hence to render them operative and effectual, we are bound to give to them a consistent interpretation. Hor is such an interpretation at all difficult. The question of fraudulent intent, is indeed a question of fact, but it is to be submitted as such to the determination of the jury, exactly upon the same terms and condi *76 tions as all other questions of fact which it is their province to determine. The existence or non-existence of a material fact, can only be properly found by a jury when the requisite proof —the evidence that the law deems to be applicable to the fact, has been given by the party upon whom the burden of proof is devolved. Hence, when the statute declares that a fraudulent intent shall be presumed, unless a contrary intent is proved, the jury, when no such proof has been given, has no right to deny by their verdict, the existence of the imputed fraud, and if in the exercise of power without right, such a verdict is rendered, it must of necessity be set aside as contrary to law.
The next inquiry is, what is the nature of the proof that the party asserting 'the validity of the sale, is bound to give, in order to rebut the statutory presumption of a fraudulent intent ? The statute gives the answer. He is bound to prove, 1st, that the sale was made in good faith, and 2d, without any intent to defraud creditors and purchasers ; for it is a serious mistake to suppose that those two questions are identical in meaning. The latter words are not superfluous, they are not in technical language mere surplusage: they were necessary to explain the whole intention of the legislature ; they were necessary to give the sanction of the legislature to an important principle, by which the courts of law and equity, in interpreting and enforcing successive statutes of frauds, have invariably been governed. The good faith of the parties, in the restricted sense in which the terms are here used, is evinced by showing that the sale was not colorable and fictitious, but was founded upon a valuable, and as the parties believed, an adequate consideration, and was intended to operate as a valid transfer of the ownership; but it is certain that such a sale may yet be fraudulent in resjDect to creditors. Even where a full consideration is actually given, the governing or leading motive of the parties may have been the design of preventing the application of the goods sold to the payment of the debts of the vendor, and this is the fraudulent intent which the statute imputes to them, in every case in which the vendor is permitted to retain the possession of the goods. Hence it is this intent that must be disproved, even where the sale is real and effectual. The validity of the sale *77 and the absence of a fraudulent intent, are distinct and independent facts, both of which are necessary to be proved, and proof of the first, in no degree alters or lessens the obligation of proving the second.
The distinction we have thus stated is by no means novel, but the rule of evidence, which it suggests, has prevailed from a very early period in the history of the law. The earliest statute of frauds is the 18 Elizabeth, Cap. 5, and the earliest case under that statute is Twyne’s case, 3 RSp. 81. In that case, as in the present, the consideration of the sale was the satisfaction of an antecedent debt, and the vendor was permitted to retain the possession of the property sold. The chancellor, and the two common law judges by whom he was assisted, were unanimously of opinion that the consideration, which was admitted to have been proved, was wholly insufficient to rebut the presumption of an intended fraud upon creditors. The authority of this decision has never been denied or doubted; on the contrary, the rule which it established, is admitted by all the text writers, and has been followed in all the subsequent cases in the English reports, and this is so certain that the citation of authorities to prove it would be a waste of time, and an idle ostentation of research. It is true, that there is no statute in England, and never has been, which declares that the continued possession of the vendor shall be presumptive or conclusive evidence of an intent to defraud his creditors ; but it is manifest that whether the presumption of fraudulent intent is an inference drawn by judges, or declared by statute, can make no difference in the natme of the proof by which alone it can be rebutted. lienee we assent entirely to the propriety of the decisions of. our supreme court in the successive cases of Collins v. Brush, 9 Wend. 198; Doane v. Eddy, 16 Wend. 523; and Randall v. Cook, 17 Wend. 56: in each of which the rule in Twyne’s case was held to be applicable to the construction of our present statute. Had wé even been compelled to refuse our assent to the propriety of these decisions, we should still have held ourselves to be bound by their authority, since we deny that their authority has been overturned or in any degree shaken, by the subsequent determinations of the court of *78 errors, in Smith v. Acker, Cole v. White, and Hanford v. Artcher. In each of these latter cases, not only was a valuable consideration proved, but many additional circumstances had been offered in proof to rebut the presumption of a fraudulent intent, and it was upon these additional circumstances that the senators, who were in favor of reversing the judgments of the supreme court, manifestly placed their chief reliance. In neither case did a single senator express or intimate an opinion, that had a valuable consideration alone been proved, or offered to be proved, the cause could properly have been submitted to the determination of the jury; but the refusal of the supreme court to admit evidence of additional facts, was in each case the sole cause of the reversal of the judgment.
The application of our remarks to the facts in the present case, is seen at once to be decisive. Admitting that the reality of the sale was sufficiently proved, there was not a particle of evidence to disprove the existence of a fraudulent intent; not a particle of evidence to contradict the presumption that the statute raised, and the facts in the case so forcibly suggested, that the real object of both father and son, purchaser and seller, was to secure the property from the grasp of the impending execution; in other words, to defraud the judgment creditor. Under these circumstances, the learned judge should have instructed the jury, that the presumption of fraud was rendered by the terms of the statute conclusive evidence of the fact.
The observations we have made, relieve us from the necessity of examining in detail the exceptions that were taken to the charge of the judge, since, if these observations are just, it is a necessary consequence that the exceptions are groundless. Some of the expressions used by the learned judge may not have been entirely accurate, and were certainly liable to misconstruction, but his charge, taken as a whole, was much more favorable to the plaintiff than his counsel had any right to expect. He distinctly submitted to the, jury the question both of a change of possession and of a fraudulent intent, and whether all the remarks that accompanied this submission were critically just, it is needless to inquire; since, if we have rightly construed the statute, these questions ought not to have been submitted to the *79 jmy at all. There was no evidence of a change of possession, no evidence to rebut the presumption of a fraudulent intent, and the learned judge wordd have been fully justified in directing the jmy to find a verdict for the defendant, as the only verdict that, without disobedience to the statute, they could possibly render. •
A single exception, independent of those to the charge of the judge, remains to be noticed. One of the witnesses, the barkeeper, swore that a portion of his salary was still due to him ; he was asked to whom he looked for payment, and the judge is supposed to have erred in overruling this question. Whether the question was proper in itself, we shall not inquire, since, had it been answered as the plaintiff wished, the answer could' not have affected the merits or law of the case. In fact, the question had been already answered. The witness had sworn that he had been employed by the plaintiff alone, and, consequently, it was the plaintiff only who could have been liable to him for his wages.
The exceptions are overruled, and the motion for a new trial denied, with costs.