Walworth, Chancellor.
This is one of that interminable class of cases arising upon the construction of the section of the revised statutes declaring, that sales and assignments of goods and chattels shall be presumed to be fraudulent when not accompanied by an immediate delivery and an actual and continued change of possession. In the cases which have heretofore come before this court for decision the complaint of the plaintiffs in error has been, that the court below assumed to decide upon the sufficiency of the evidence offered to rebut the presumption of fraud, and had not submitted the question as to the fraudulent intent to the jury as a fact; of which fact, as it was supposed, another provision of the statute had made the jury the exclusive judges. But in the case now before us the principal complaint is, that the circuit judge left too much to the decision of the jury, by instructing them that it was foi them to decide whether there was any good reason shown, which they could approve, why there had not been an immediate delivery and an actual and continued change of possession. 1
In the case of Butler v. Van Wyck, (1 Hill’s Rep. 438,) the supreme court has erroneously assumed that in Smith & Hoe v. Acker, (23 Wend. Rep. 653,) a majority of the members of the court had decided, that proof that a chattel mortgage or a sale of property was founded upon a sufficient consideration, was of itself enough to rebut the presumption of fraud arising from *275 a want of change of possession ; and that., if a consideration was proved, whether any excuse for the continuance of the possession was given or not, the question of fraudulent intent must be submitted to the jury, as a matter of which they were the exclusive judges. The property, in the case of Butler v. Van Wyck, was levied on in the possession of the mortgagor, as in the case of Smith & Hoe v. Acker; and as nothing is said about it in the opinions of Justices Bronson and Cowen, they probably came to the conclusion that this court had also overruled their decision on this point in Randall v. Cook, (17 Wend. 54,) and bad decided that an action of replevin for an unlawful taking could be sustained against the sheriff for levying upon mortgaged property in the hands of the mortgagor, before th,e mortgagee had attempted to assert his right to the possession by virtue of the mortgage. I am satisfied, however, that neither of those questions was intended to be decided by a majority of the members of this court in the case of Smith & Hoe v. Acker. Although the report of that case now contains an elaborate opinion of one of the senators upon this last question, it will be seen, by a reference to the opinion itself, that it must have been prepared after that cause was decided. And that the fact is so, will be recollected by such of the members of this court as were present when the judgment in that case Was given. That opinion, therefore, cannot be considered as having been adopted by "the other members of this court wdio voted for a reversal of the decision of the court below, and who never heard of it until it appeared in the printed reports.
To understand the extent of the decision intended to be made m the case of Smith & Hoe v. Acker, a short explanation appears to be necessary. That case was not argued in this court, but was submitted upon very imperfect briefs just at the close of the session for the hearing of arguments, probably with a view of obtaining a speedy decision of the question upon which the justices of the supreme court had differed in Doane v. Eddy, (16 Wend, Rep. 523 ;) or rather what some persons supposed the supreme court had intended to decide in that and other ca *276 ses ; viz. that nothing short of a physical impossibility would be sufficient to excuse the immediate delivery of the property, and rebut the legal presumption of fraud. And it will be seen by the report of the case of Smith & Hoe v. Acker, that the written opinions of Senators Edwards and Hopkins were confined to 'that question alone. Nor had any other member of the court except myself looked into the record for the purpose of ascertaining whether the decision of the cause at the circuit necessarily turned upon that question.
As it is a well settled principle that if the court below has given the proper judgment in the case, it cannot be reversed on a writ of error, although the court or judge who decided the cause has given an insufficient or erroneous reason therefor, I considered it my duty to look into the error book for the purpose of seeing whether the nonsuit in that case was properly granted. Upon that examination I found, or supposed I found, two unanswerable objections to the plaintiff’s right to recover in that suit; one of which at least was of such a nature that it could not .possibly have been obviated at the circuit, even if the opinion of the judge was wrong upon the question on which he based the nonsuit. Having very little time for investigating the important principle involved in what was deemed the main question, and wishing to hear it fully argued, I did not therefore examine it at all, but placed my vote in favor of the affirmance of the judgment upon the other grounds.
One of those grounds was, that the statute of 1833 had declared that a chattel mortgage, which was not accompanied by an immediate delivery of the property, should be absolutely void as against creditors, unless such mortgage Was filed in the clerk’s office as directed by that act; and that, as the mortgage under which the plaintiffs claimed had not been filed, without unreasonable delay after it was executed, the statute of 1833 had made it absolutely void as against creditors. But what I considered a more clear and unanswerable objection to the right of the plaintiffs to recover, in Smith & Hoe v. Acker, was, that the revised statutes had made it the duty of the sheriff *277 to levy upon the interest of a defendant in goods pledged for the payment of a debt. (2 R. S. 366, § 20.) And as the sheriff had levied upon the property then in question in the hands of the mortgagor, and before the plaintiffs had claimed and exercised the right to reduce it to possession by virtue of their, mortgage, an action of replevin for merely levying upon the property could not be sustained; and if the sheriff had wrongfully detained the property from the mortgagees, after such levy, that a different action for the improper detention of the property should have been brought. (See 17 Wend. Rep. 54, and 3 Hill’s Rep. 348.) I also referred the court to the notes of the revisers, to show that the 20th section of the article of the revised statutes, in relation to executions against property, (2 R. S. 366,) was intended to place the right to sell personal property mortgaged and continuing in the possession of the. mortgagor, upon the same footing as real estate mortgaged, while it continued in the possession of the mortgagor. And I think I succeeded in satisfying most of the members of this court, that by the statute the sheriff was authorized to levy upon mortgaged property thus situated, and to sell the right of the mortgagor in the same, subject to the right or claim of the plaintiffs if they had any ; leaving the question as to their right, and the extent of it, to be settled between them and the purchaser. The report of the case shows that some of those members thought with me, that the nonsuit was right upon that ground ; as the objection was one which, if raised at the circuit, could not have been obviated by the plaintiffs. But the rest of'the court thought that question could not be raised on the writ of error ; inasmuch as the judge at the circuit had placed his decision upon another ground. Nothing therefore can be considered as having been decided in that case beyond this : that where the prima facie evidence of fraud, arising from the non-delivery of the property, is rebutted by proof that the whole transaction was fair and honest, and that there was no intention to delay or hinder creditors in the collection of their debts, it is not absolutely necessary to show the impossibility *278 of an immediate delivery of the possession of the property, in addition to such proof.
The case of Cole & Thurman v. White, (26 Wend. Rep. 511,) was decided upon a different ground. The property mortgaged in that case- was an undivided interest in« a vessel which was absent on a voyage to the upper lakes at the time of the" execution of the mortgage ; and the vessel was also run for the season by the mortgagors upon the joint account of themselves and the other owners. An immediate delivery of the property to the mortgagees was therefore not only impossible, from the absence of the vessel, but would also have been inconsistent with the rights of the other part owners, who were authorized to insist upon the performance of the agreement to run the vessel for the season, on the joint account of the owners. I placed my vote, in that case, also upon the ground that the admission of the plaintiff’s counsel that the debt for which the mortgage was given was actually due and that the mortgage was given at the solicitation of the mortgagees for the purpose of securing that debt, was equivalent to an admission that the security of the debt was the sole object of the giving of the mortgage, and not the ostensible object merely.
There is nothing, therefore, in either of the decisions referred to, from which it can properly be inferred that a majority of the members of the court ever intended to decide that, upon mere proof that a sale, or assignment of goods was upon an adequate consideration, the jury was legally authorized to find that the sale or assignment was valid, although it was not accompanied by an immediate delivery of the property and an actual and continued change of possession. On the contrary, Senator Hopkins, in his opinion in Smith Hoe v. Acker, distinctly states that the statute throws the onus upon the party claiming under the sale or mortgage, not accompanied with an actual delivery of possession, of proving not only that the transaction was in good faith, for a good and valuable consideration, but also such circumstances of publicity and reasonable *279 ness as to amount, time, value, and quantity of property, difficulty or inconvenience of removal, advantages of allowing it to remain, or other circumstances agreeable with the ordinary course of business and fair dealing, as shall satisfy the jury that there was not any intent to defraud, hinder, or delay creditors. And even in the published opinion of Senator Verplanck, who I believe has gone as far as any member of this court has ever yet gone in sustaining sales and assignments of property without a change of possession, he says: u A valuable consideration, when satisfactorily proved, affords a'strong indication of good faith ; but still, this alone may not be inconsistent with the possible existence of a collusive design to impose upon others. As it is to be made manifest that there was no such design, there should be evidence of some fact inconsistent with that intent.” It is true he follows this by an intimation that proof of mere family kindness will be sufficient to rebut the presumption of fraud, or proof of other facts which could always be adduced by the parties to a fraudulent sale ; the effect of which construction of the statute would be to defeat the whole object and intent of the legislature.
The legislature has declared that the question of fraudulent intent, in all cases arising under the statute, shall be a question of fact; not, as some have erroneously supposed, a question which must in all cases be submitted to the jury, whether there is or is not sufficient legal evidence to support the charge of fraud on the one hand or to rebut it on the other, where the onus of disproving it is thrown by law upon the purchaser or mortgagee. But the legislature has merely declared the question of fraud to be one cf fact, as contradistinguished from a question of lawT To elucidate this distinction, it is only necessary to allude to the case which gave rise to the provision of the revised statutes declaring that the question of fraudulent intent shall be one of fact. (See 3 R. S. 658, 2d ed.) In that case, (Jackson v. Seward, 5 Cowen's Rep. 67,) a* father who owed some debts and had a large property, made a voluntary conveyance *280 or gift of a part of his property to one of his sons, but leaving, as he then supposed, ample funds in his own possession and control to pay all his debts, and to provide for the future support of himself and his family. From unforeseen occurrences he was subsequently charged and rendered personally responsible for a large debt arising from a contingent liability created before the conveyance. And though it was admitted on the trial, and was afterwards found in the form of a special verdict, that the conveyance was made without any intention of delaying or defrauding any of his creditors, the supreme court, in accordance with the decision of Chancellor Kent in Reade v. Livingston, (3 John. Ch. Rep. 481,) held that the voluntary deed to the son was fraudulent in law as against creditors then existing, and that no proof could rebut the legal presumption of such fraudulent intent. The correctness of those decisions was questioned when the case of Seward v. Jackson came before this court, though the decision here appears to have turned upon a different question. It is admitted, however, by the revisers, in their note to that section, that the modern cases in England fully established the doctrine of Chancellor Kent, that voluntary conveyances were absolutely void as against existing creditors and subsequent purchasers. And this section of the revised statutes, declaring that the question of fraudulent intent, in all cases arising under the provisions of that chapter, should be deemed a question of fact and not of law, was introduced for the express purpose of letting in proof in such cases to rebut the legal presumption of fraudulent intent arising from the fact that the conveyance was not founded upon a valuable consideration. It is true, this section, when it was drawn by the revisers, was not intended to apply to the case of a sale or assignment of personal property without delivery and an actual and continued change of possession ; for, in relation to that they had adopted the only safe and effectual mode of guarding against frauds of that character, by declaring all such sales and assignments absolutely void as against creditors and subsequent purchasers. If the *281 legislature bad followed this recommendation of the revisers, they would have prevented innumerable frauds which are constantly practiced under pretended sales, assignments for the alleged benefit of creditors, and chattel mortgages ostensibly given to secure honest debts only, when, in two cases out of three, such mortgages are given for the purpose of enabling the mortgagor to retain the use of his property for a longer period, and to prevent its being levied upon by creditors who are pressing for the payment of their honest dues. It would also have saved to the people of the state the immense sums which are now annually spent in litigating the question of fraudulent intent in such cases. But the legislative power, in its wisdom, thought otherwise j and, by the alteration rtf this provision from that which was recommended by the revisers, has, as I think, made the fourth section of the third title applicable to it.
There is no reason however to believe that the legislature, by either of these provisions, intended to change the law in relation to the manner in which matters of fact were to be tried and decided, or to give the jury in such cases the absolute and sole right to judge of the materiality or the sufficiency of the evidence to establish an intention to defraud, or to rebut the presumption of such intention when it was necessary to do so. The questions whether the defendant made a promissory note, and whether he has paid it, are, equally with the questions of intent arising under this statute, questions of fact and not of law. But it is still the duty of the court to decide what is proper evidence to prove that the defendant made the note, or to establish the fact that it has been paid ; and also 1o decide whether the plaintiff has introduced sufficient evidence of the making of the note to authorize the jury to find a verdict in Lis favor, and if not, to nonsuit the plaintiff. On the other hand, if the making of the note is established, and the evidence on the part of the defendant is wholly insufficient to authorize a jury to find the fact of paymént, it is not only the right but the *282 duty of the court so to instruct them, if requested to do so by the counsel of the other party.
So in cases arising under the statute of frauds, where the act in question is not necessarily fraudulent, but depends altogether upon the intent with which it was done, if the party who is bound to rebut the presumption of fraud arising from the nondelivery of the property, by proving that the assignment was made in good faith and without any intent to delay or hinder his creditors in the collection of their debts or to defraud them or subsequent purchasers of the property, wholly fails to give such evidence as the settled- principles of law require, to rebut the presumption of fraud, it is the right of the court to say so. But if the proof is sufficient in other respects to rebut the presumption that there was any intention to delay tif hinder creditors iti the collection of their debts, and a satisfactory reason is given for the non-delivery of the property, which is consistent with the honesty of the transaction, I think it is not necessary that an impossibility to make an immediate delivery of the property should be proved, to authorize the jury to find there was no fraud in the case. But, as in other questions of fact, every case must in some measure depend upon its circumstances.
The statute, however, has made the non-delivery of the property evidence of fraud-; as the retaining of possession, after an absolute sale or assignment, without any good reason shown therefor, is inconsistent with the supposition that the vendor did not intend to secure a benefit to himself from the temporary use or management of the property. And a reservation of such a benefit to himself, where the property by the sale or assignment is placed beyond the reach of creditors, is of itself a fraud upon such creditors; as it does delay and hinder them in the collection of their debts. In the case of an absolute sale or assignment, therefore, I think it is necessary, in addition to other proof of the bona fi'des of the transaction, to furnish a satisfactory excuse to the court .and jury for the non-delivery of the property. And certainly, proof that it was necessary or convenient for the defendant or his family to have the use of *283 the property which he has sold and received his pay for, or that he can sell and dispose of it more beneficially than the trustee to whom he has entrusted the sale by his assignment, is not such a reason as should be satisfactory to any one. For those are reasons to show that he would not have sold or assigned the property at all, unless his real object had been to place the property beyond the reach of his creditors, and thus to delay and hinder them from collecting their debts. And when a debtor in failing circumstances, whose property is about to be levied upon by one creditor, mortgages it to another for the purpose of preventing such levy, thereby securing to himself the temporary use and benefit of the property, it is a fraud upon the first creditor, although such mortgage is given to secure an honest debt. The debtor has a right to prefer one creditor to another; but he has neither the legal nor the moral right, in giving such preference, to do it in such a way as to secure a benefit to himself at the expense of the creditor who has a right to his debt immediately, and who may himself perhaps be ruined by being deprived of the use of his money, while the debtor is thus delaying payment to obtain a better price for his property or to secure to himself the advantage of the temporary use of it.
For these reasons I think the circuit judge was right in submitting the question to the jury, as a proper subject for their consideration, whether the plaintiff had shown any good reason, which was satisfactory to them, why there had not been an immediate delivery of the property and an actual and continued change of possession, in case they should find that it continued in the possession of Norton until it was levied upon by the execution.
Besides, upon the whole charge taken together, I think the question of fraud or no fraud was fairly submitted to the jury as a question of fact for them to decide. And unless this- court is prepared to place itself in the absurd position of saying that the judge is to decide the question of fraudulent intent wherever there is any danger that the jury may be against the *284 party on whom the onus of disproving the fraud lies,,, and is only to submit the question to the jury when they will probably find in favor of the bona fides of the transaction, this verdict cannot be disturbed on the ground that the case was not properly submitted.
The question whether the employment of Norton as clerk, and the management of the property by him, was bona fide, or whether the original assignment and the sale to Hanford and the putting in of Norton to manage the concern, was not a mere device to-cover up the property and place it beyond the reach of creditors, was a question of fact for the jury to decide. The judge was right therefore in refusing to charge as requested in relation to that matter. Nor would it have been proper, after the charge which had been given, for the judge again to have charged the jury upon the other point, which was necessarily embraced in the instructions already given to them ; especially as this new proposition was couched in language which was intended to draw the attention of the jury from what the statute had declared to be conclusive evidence of fraud until the contrary was proved.
The question put to the witness Russell was properly overruled. The statute having declared what should be the legal evidence of fraud, and thrown upon Hanford the onus of proving that the assignment w7as made by Norton in good faith, without any intent to defraud his other creditors, that presumption of fraud could not be disproved by a general answer of the assignee that there was no fraud in the case, so far as concerned himself. The witnesses must state facts, and are not to be required or permitted to answer leading questions which involve the whole matter in issue in such cases.
It is not necessary for me to say whether I should have arrived at the same conclusion that the jury did upon the question of fact involved in this case. But as I am perfectly satisfied that no legal principle has been violated which can justify this court in reversing the judgment for error in law7, I do not feel authorized to usurp the province of the jury in this case, and *285 to reverse the judgment because the jury may have decided wrong upon a matter of fact. I shall, therefore, vote for an affirmance of the judgment.
Hopkins, Senator.
This court in the case of Smith & Hoe v. Acker, (23 Wendell, 653,) decided two important questions arising under the revised statutes relative to sales and mortgages of personal property not accompanied with, delivery and change of possession. First* that the party claiming under such sale or mortgage may rebut the presumption of fraud arising from want of delivery and change of possession, by proving that the transaction was in good faith and without any intent to defraud creditors—not by showing some mere excuse or reason that had been deemed necessary by the supreme court, why there had not been a change of possession, but by proper and relevant testimony to show the real bonafides of the transaction. And second, that the question of intent arising in the case, is one of fact for the jury to try.
In the present case, the circuit judge so far conformed to that decision as to submit the cause to the jury ; and the question remaining is, did he submit the whole bona fides of the case to their consideration 1 Or did he not rather, in his charge, limit the consideration of the jury, (in case they found that possession of the property had not been changed,) to the mere enquiry whether there was any excuse, or, to use his own language, “ any good reason,” why possession had not been changed ? In his charge he instructed the jury that “ if they found that the property remained in the possession of Norton until levied on, then they must enquire whether there was any good reason shown by the plaintiff which they could approve, why there had not been an immediate delivery and an actual and continued change of possession.” Again, after referring to former decisions of the supreme court to show' what had been decided to be good reasons, “he further directed the jury that if they found sufficient reasons for the possession not being changed, then their verdict must be for the plaintiff.” Al *286 though in one part, of his charge he says, c< that it is competent for the plaintiff to rebut the presumption of fraud by showing that the assignment was made in good faith and without any intent to defraud creditors,” he qualifies the expression by adding in the same sentence, “ that the presumption of fraud arose from failure to accompany the assignment with delivery and change of possession ; that it u>as for the plaintiff to explain such failure, if the jury thought, it had\occurred, and to show some good reason for it. If he had ^6 done, the jury would find a verdict for the plaintiff ; otherwise, their verdict would be for the defendant.” Thus, in concluding his charge, having informed the jury what the supreme court had decided to be good reasons to explain failure of delivery and change of possession, he, in substance, the third time, instructed the jury that it was necessary for the plaintiff to explain such failure, if it had occurred, and show some good reason for it; and upon this their verdict must depend.
He seemed to put the whole issue upon, this point, and in substance declared to the jury not only that such good reason for want of change of possession was necessary, but that it was all that was necessary. He does not instruct che jury to en-quire whether there was any consideration even or indebtedness. Nothing was required and nothing allowed to rebut the presumption of fraud, but some good reason why possession •was not changed. This is more clearly evident when, upon being requested, the judge refused to charge specifically, without the qualification as to the good reason, “ that if from the facts proved and given in evidence, they believed that the sale was in good faith and without any intention to defraud creditors, such sale was valid.” But even if he did not intend to instruct the jury that such proof of good reasons for non-delivery was necessary, yet the charge was eminently calculated to mislead the jury in that respect. If, under charges like this, juries may be tied down to the consideration of good reasons required by the court, to excuse a want of delivery, and are prevented from considering the whole bona fdes of the case, the statute *287 is as much nullified as if the court refuse to submit the case to the jury at all, but, as heretofore, take it into their own hands. The same result is arrived at, only in a different way. The case is in form submitted to the jury, but under instructions leading to the same final result as if decided by the court.
The trial of the cause took place prior to the decision of this court in Smith & Hoe v. Acker ; and it is not surprising that the charge of the judge is found to conform to the opinions of the supreme court. Since that decision, it is hardly reasonable to suppose that such a charge would be given, unless, possibly, some circuit judge should be found to concur in the views of the learned justice who delivered the dissenting opinion in the case of Butler v. Van Wyck, (1 Hill, 438,) and deny the authority of the decisions of the court of last resort as conclusive upon inferior tribunals whose decisions are subject to its review and correction.
Since such a doctrine has been gravely argued as regards the decisions of this court, and an attempt made particularly to lessen the force of the decision in the case of Smith & Hoe v. Acker as authority settling the law of the question arising under the statute, it may not be improper to make some remarks vindicating the decision of this court in that case. It may have been supposed that the case did not have the consideration which the importance of the question merited. It is erroneously stated by the learned dissenting justice, that but one opinion, which (with how much propriety it does not perhaps become me to say) is called the l( prevailing opinion,” was delivered on that occasion—whereas, in fact, several opinions were read and delivered, fully concurring in the principal points decided. Senators Verplanck and Edwards examined the question at much length and with their usual ability, coming to the same conclusions. The members expressed their opinions perhaps more freely than usual in deciding cases in this court. Twenty-one members, being every member present who voted upon the principal question, voted for reversing the decision of the supreme court. Four members voted for *288 affirmance, but expressly, as appears by the report of their opinions, upon other grounds—on points not raised at the trial, nor considered in the supreme court, nor in the argument in this court. Of the four who voted for affirmance, not one expressed any opinion dissenting from the views of the majority on the main question, or concurring with the opinion of the supreme court. Indeed, as regards the vote upon the principal questions decided, it may be said to have been unanimous or very nearly so.
But it seems to be contended, that the decision of this court in that case ought not to be deemed authority, because certain ancient decisions were not sufficiently heeded or alluded to in the cc prevailing opinion”—decisions which, it is admitted by the learned dissenting justice himself, were made before the revised statutes under which the question arose took effect. The cases of Sturtevant v. Ballard, (9 John. R. 337,) and Dinner v. McLaughlin, (2 Wendell, 596,) are cited to show that the question of fraud, arising from non-delivery, is a question of law for the court to decide. Now it was wholly unnecessary to refer to any decisions to discover such to be the case, for the statute itself declares that, the possession being unchanged, fraud shall be presumed; and that of course is a question of law, or a legal presumption for the court to declare. But the statute, by a further provision, permits a question of intent to be raised to rebut this legal presumption of fraud; and this question of intent, the statute expressly declares shall be a question of fact and not of law. Again, an expression in Twyne's case is quoted to show “ that continuation of possession in the donor is a sign of a trust”—of course not positive evidence, but a mere sign of a trust. Now it was equally unnecessary to refer to any authority on this point; for our statute is sufficiently explicit, and makes it not merely a sign of a trust, but declares it presumptive evidence of fraud. But the further provision of the statute allows the presumption of fraud to be rebutted by evidence of good faith; which provision the decisions of the supreme court declare means noth *289 ing, or at least something entirely different from what its language plainly imports. It was equally unnecessary to look into the prior decisions to discover that the object of the statute was to provide a remedy for more easily establishing fraud, by presuming it in the first instance, in transactions which, however, if shown to be free from fraud, are to be upheld as legal. A partial reference to a remark of the kind contained' in the “prevailing opinion,” seems to be made the ground of an inference that the decisions upon the question might not have been examined—an inference contradicted by the whole tenor of the opinion itself, which not only acknowledged the embarrassments arising from the decisions and conflicting opinions with which legal talent had already encumbered the reports, but was itself mainly occupied by an examination of the leading cases decided in the supreme court since the existence of the statute under which the question arose.
The senator who is said to have delivered the “prevailing opinion” stated in the outset, that the question arose under the revised statutes; and although he conceded, as a reason for examining the question at much length, that his views conflicted with the course of decisions of the supreme court, which he nevertheless contended to be erroneous, the remark was of course made with reference to the decisions of that court since the passage of the statutes under which the question arose. To infer, from that remark, a general admission that the decisions of the supreme court on the subject, including decisions prior to the revised statutes, had been uniform, is as clear and palpable a misconstruction of its meaning, as was the effort illogical and unjust to make the same remark of a single senator the ground of an argument or charge that this entire court had avowedly disregarded a uniformity of decisions known not to exist. It is needless to say that many of the decisions made prior to the revised statutes on the same subject, (though not on the same question, which could not arise till after the revised statutes,) did not conflict with the doctrine of the “ prevailing opinion,"’ but sustained it. (See Barrows v. Paxton, 5 John. R. 258; *290 Beals v. Gurnsey, 8 id. 452; Bissell v. Hopkins, 3 Cowen, 188.) The decisions prior to the revised statutes, so far as applicable at all, not only in many instances conflict with the later decisions of the supreme court, but often with each other, leaving the law in fact unsettled and uncertain ; and it was to relieve it from this uncertainty that the provision was introduced into the revised statutes of 1830, putting the question (if indeed there need to have been any question left) upon quite different grounds from what it had been. The still later act of 1833, requiring mortgages of personal property to be filed, when not accompanied with delivery of possession, was also deemed to have affected the question, as amounting to a legislative expression, that such mortgages are to be deemed valid if the requirements of the legislature in regard to them are complied with; that is, if the party claiming under such a mortgage shall show it to have been made in good faith, and also that he has given public notice of its existence by filing the original or a copy—:thus, to some extent, making the question of still more recent date.
The decisions of the supreme court, annulling, as it were, the provisions of the revised statutes, it is believed were very generally considered by the bar to be erroneous, and not as having settled the law upon the subject. Even so late as January term, 1837, only the year before the case of Smith & Hoe v. Acker was tried, the learned chief justice of that court, in his dissenting opinion in Doane v. Eddy, (16 Wend. 529,) held the doctrine settled by this court in Smith & Hoe v. Acker to be the true doctrine. The same opinion was entertained by the late Chief Justice Savage. Nor has the doctrine of the two associate justices of that court been wholly acquiesced in. The case of Stoddard v. Butler, (20 Wend. 507,) which came here on appeal from the court of chancery, involved the same question, connected however wdth a question of fraud in fact. In' that case the question was very ably examined. The decisions, ancient and modern, were reviewed at great length and with eminent ability by Senator Dickinson, now chosen to preside over *291 the court of which he was then a distinguished member, and also by Senator Yerplanck, another distinguished member of the court, both coming to the conclusion that the decisions of the supreme court on the question were erroneous. It is said that a majority of the members were of the same opinion; but as some who concurred with them on that point voted upon the ground of actual fraud, the court was di%rided and the question consequently left as unsettled as ever; except that the impression gained strength, that if a case should be brought to this court free from other questions, the doctrine of the supreme court would be overruled—as in fact was the case upon the first opportunity that afterwards occurred. Three members of the court, the President and Senators Tallmadge and Edwards, who voted for affirmance in that case, afterwards voted for reversal in the case of Smith & Hoe v. Acker; and two of them declared on that occasion that they should have voted for reversal in the case of Stoddard v. Butler, only that they voted on other grounds. So if that case had presented the naked question, it seems that it too would have been reversed. And yet that case is cited by the learned dissenting justice, to show that the question had been settled by this court in favor of the supreme court rule. Other high judicial tribunals, however, of this state, seemed to view it differently ; and, even before the decision of this court in Smith & Hoe v. Acker, wholly rejected the doctrines of the supreme court, or, it should rather be said, of a majority of that court, on the question. See Lewis v. Stevenson, (2 Hall, 63,) decided in the superior court of the city of New-York in June term, 1839, and Lee v. Huntoon, (1 Hoffm. Ch. R. 447,) decided by the able assistant vice-chancellor Hoffman, February, 1840. With what propriety, then, can the decisions of the supreme court be said to have become the settled law of the land, and not subject to be examined and overruled by a court expressly constituted fo.r the purpose of reviewing and correcting the erroneous decisions of that and other courts 'l And such, too, are the decisions constituting “the shackles of legal authority,” *292 which, it is complained, were thrown off in deciding the case of Smith & Hoe v. Acker.
But it is also argued by the learned dissenting justice, that the. omission of the legislature of 1839 to pass a law legalizing mortgages of personal property without a change of possession, is to be taken as a legislative construction in favor of the supreme court rule. If any thing can legitimately be inferred from this omission, it would rather seem to be that the members of the legislature were of opinion that no further legislation was necessary to legalize all that could be proved to be fair and honest; or possibly they thought the law to that effect could not be made plainer, and if not already understood or heeded by courts, it would be useless to pass any further law-up on the subject, or to endeavor to bring the law within then comprehension. At all events, it appears that the very next year, one branch of the legislature, in its judicial capacity, consisting of at least three fourths of the same persons who composed it in 1839, did, in deciding the very case of Smith & Hoe v. Acker, give a construction quite at variance with the supreme court doctrine; since which, two sessions of the legislature have passed, silently acquiescing in that decision. It is believed too, that one of the members of this court who concurred in that decision, was a distinguished member of the legislature, if not one of the revisers, at the time the provision of the revised statutes under which the question arose was adopted, and that he took part m its adoption. If, then, any thing is to be inferred from legislative action or inaction, it can hardly be in favor of the supreme court rule
But other objections have been urged against the correctness of the decision in Smith & Hoe v. Acker. One, that the mortgage was not filed in due time, when, in fact, it is stated in the case to have been regularly filed, and no question was raised in relation to it on the trial or in argument. Another objection not raised on the trial or in argument was, that the mortgagor had an equitable or redemptionary interest, which the sheriff had a right to sell. But, from the case, it would seem that he *293 levied on the whole interest in the property ; and besides, the learned dissenting justice in Butler v. Van Wyck, raised an objection inconsistent with the last, viz. that the mortgage was due and the title of the mortgagor forfeited, and urged as a feature of fraud, that the mortgagor was allowed to remain in possession nine months after the title had become absolute in the mortgagee. This was a circumstance proper, perhaps, for the consideration of the jury, and was, with the explanation in that case, submitted to the jury ; but the supreme court rule would exclude it from all consideration. It is also said that the use of the property while so remaining in the hands of the mortgagor must have been worth several hundred dollars to him. Was that not better than to have delivered it to the mortgagee—who could not use it at all—to remain a dead pledge, of no benefit to any one?
Cases are cited to show that this court and other courts sometimes overrule their own decisions, and it seems therefore to be inferred, that the supreme court may also overrule or disregard the decisions of this court. If such is a proper inference, with how much more propriety may it be inferred that this court, created for the purpose of reviewing decisions of the supreme co urt, may overrule the erroneous decisions of that court.
To insist that the decisions of a court whose judgments are the subject of review by another tribunal, which decisions, not having been wholly acquiesced in, have been overruled by the reviewing tribunal, and upon a question arising under a statute of not long standing, are still to be held as authority paramount to the decisions of the reviewing tribunal, evinces how difficult it is, even for those distinguished for their legal attainments, acuteness of intellect and the purity of their intentions, to free themselves from the influence of early opinions. And without intending any reflection upon the profession to which I belong, it may perhaps be said to evince the wisdom of the framers of our constitution, in permitting to be brought into the couit of last resort, the plain good sense and unbiassed sound judgment *294 of the laity to mingle with the talent and legal erudition of the profession, who nevertheless may be liable to bring with them to the bench the errors of prejudged opinions formed at the bar.
If the decisions of this court made upon argument and due deliberation, under circumstances where there can be no doubt as to the point decided, are not to be held as authority, conclusive in tribunals whose decisions are subject to its review, the result must be a series of perpetual conflicts and a u glorious uncertainty of the law.” At all events, it would not seem presumptuous for a tribunal, devised by the framers of the constitution as the court of last resort in the state, constituted almost entirely of one branch of the legislature, to claim for its decisions some force of authority, when passing upon the intention and meaning of legislative enactments; and I am happy to know, that the majority of the supreme court, in deciding the case of Butler v. Van Wyck, has recognized the decision of this court as authority, settling the law of this much agitated question. And it is hoped that the learned justice who dissented in that case, however much he may insist that the decisions of this court may be disregarded, will not, to use his own language, “ throw off the shackles of legal authority” imposed by the court of which the learned judge himself is a distinguished member.
It has been remarked by Mr. Justice Cowen, that, since the decision in Smith & Hoe v. Acker, almost any excuse might be shown why possession was not changed, and that the court could have no proper control over the testimony. I am not aware that any thing there decided or said by way of argument would justify so broad an inference. Although what is called the “ prevailing opinion” claims for the jury the right to decide upon the weight of evidence, it expressly yields to the court the right to decide upon the relevancy of the testimony offered; but it must of course decide with reference to the proper issue, that is, with reference to its tendency to show good faith and *295 absence of fraudulent intent in the case, and not with reference to the mere question whether delivery was practicable. The difference between this court and the supreme court was not so much as to what particular evidence should be received or rejected, as what the question was to be tried, and who should try it. This court says that the case involves a question of intent, which, under the statute, the jury are to try. The supreme court has insisted that the issue was, whether delivery was practicable, and that the court should try it. It now being settled that the issue to be tried is, in part at least, a question of intent, it follows that proper and relevant testimony to show the intent is to be submitted to the jury. “ The court decides whether there is any evidence ;” or, in other words, whether the evidence offered is relevant to show intent, “ and the jury decides whether it is sufficient.” (1 Phil. Ev. 15.) I do not discover why there need be more difficulty in trying questions of intent in these cases before a jury, than other questions of intent required to be so tried, or a case of fraud where there has been a delivery. Indeed, there would seem to be less difficulty, inasmuch as in these cases, fraud is presumed in the outset, and the party objecting to the sale or mortgage is relieved from the burden and difficulty of proving it. Fraud is presumed ; that is, if possession was not changed, it is pre sumed that the sale was without consideration or without an adequate one, and also that there was some secret trust or an intent to defraud creditors. To rebut this presumption, the statute imposes upon the party claiming under the sale or mortgage, the burden of proving not only that it was in good faith, but that it was without any such intent to defraud creditors. Proof of a valuable consideration or an honest debt is essential to show good faith; and if there be no such proof, I take it that the requirement of the statute in this respect is not complied with, and that the court may order a nonsuit, or, if a verdict be found, set it aside, just as it would be bound to do in a mortgage case if a copy had not been filed nor notice shown. Such proof of consideration too must go beyond a *296 mere paper acknowledgment of it, that might be binding between the parties. But over and above evidence of consideration or an honest debt to show good faith, the statute seems to contemplate something further, that is, proof of circumstances showing absence of intent to defraud creditors—such circumstances as would show (hat the transaction was in the ordinary way of fair dealing and with reasonable publicity under the circumstances ; if a commercial assignment, that notice was published, or given to the creditors; in a mortgage case, that a copy was filed, or nptice brought home to the creditor—or such other relevant circumstances as the case may reasonably admit of, to satisfy the jury that the transaction was without any intent to defraud creditors.
The admissibility of proof of circumstances showing that the party, leaving possession unchanged, was actuated by motives of humanity or friendship arising from family connexions or other laudable motive of the kind, is a subject that has been discussed. So far as such circumstances go to show absence of fraudulent intent, I do not see why they are not admissible. If it appear simply that the parties are family connexions or confidential friends, so far as my observation has extended, it has been considered by juries, no less than by judges, as strengthening the presumption of fraud, inasmuch as the transaction is between persons with whom a secret trust is likely to exist. But if facts or circumstances be proven, showing that there was some necessity, reasonable fitness or propriety for leaving possession unchanged in order to carry out some purpose of humanity—a laudable desire to contribute to the comfortable support of a near relative or friend, or to aid him in a lawful business, or other laudable object consistent with honest intent—the presumption of a secret trust or intent to defraud would probably be overcome in the minds of the jury. Fraud may he proved by circumstantial evidence. (Waterbury v. Sturtevant, 18 Wend. 353.) Why then, when presumed, may it not be rebutted by circumstantial evidence 1
In connection with testimony of good faith, no doubt reasons *297 may properly be shown why possession was not changed ; but it was no where contended in deciding Smith & Hoe v. Acker, as was supposed on the argument of the present case, that such reasons were necessary, if a case of good faith and absence of fraudulent intent was otherwise made out. In a case where it should appear that the property might have been delivered, and no reasons of convenience or advantage, nor circumstances showing the party to have been actuated by motives of humanity or other laudable motive consistent wdth honest intent, are shown why the possession wras not changed, it would no doubt require a very clear case of good faith in all other respects, to satisfy the jury that all was honest and fair.
A question was raised on the argument as to the meaning of the word <£ actual,” contained in the statute on this subject. I think it was intended to have a literal meaning ; otherwise it is surplusage. If a constructive or mere legal delivery, without a literal actual one, may be deemed an actual delivery, the object of the statute to change the on us probandi and compel the party to show good faith is easily defeated. A mere paper transfer, valid on .its face, may be shown, accompanied by a formal or mere legal delivery, while the vendor is left in the actual possession or control as clerk ; and then, if this legal clelivis to be deemed an actual one within the meaning of the statute, no presumption of fraud arises, and itwould not be necessary for the party claiming under the sale, to show even a consideration or any other evidence of good faith. His paper title, with this kind of actual delivery, would be sufficient ; that is, a sale binding on the parties to it would be obligatory upon creditors, and the object of the statute by raising a presumption of fraud to compel the party to show good faith, would be defeated.
For these reasons I am of opinion that the circuit judge correctly refused to charge as requested under the second and third instructions. So long as Norton was allowed to be in possession or control of the goods, although in good faith as clerk, there was no actual change, of possession so as to relieve the plaintiff from proving good faith in all other respects. In *298 showing good faith generally, it was no doubt proper to prove that Norton was employed in good faith as clerk. The judge might properly have charged the jury, that if they found that Norton was employed as clerk, in good faith, That would not render the sale void, provided they found the sale to be in good faith in all other respects. Probably., in showing that Norton was employed in good faith, it would appear that the transaction was in good faith in other respects ; but such might not be the case. The plaintiff might have shown a mere paper sale and that Norton was employed in good faith as clerk, and yet not be able to show any consideration, indebtedness or publicity. As to the meaning of the word “ actual,” as used in the statute, see also Camp v. Camp, (2 Hill, 628.) I am also of opinion that the judge correctly overruled the question put to the witness Russell as to his intentions.
I think, however, that the judge erred in his charge to the jury. He no doubt intended to put the cause, as far as the case would admit, upon the grounds of the supreme court decisions which have since been overruled by this court. Even in submitting the case to the jury, he evidently did it under the impression that a constructive or mere legal change of possession, of which there was some proof, might, if found by the jury, be taken as an actual change. If there had been no evidence of such constructive change of possession, the judge would, without doubt, have withheld the case from the jury and have nonsuited the plaintiff under the supreme court rule; but there being some evidence of such delivery, he let the cause go to the jury, but limited their consideration, in case they found there was no such delivery, to the mere enquiry whether there was any good reason for it. He did not even instruct them that it was necessary to enquire whether thére was any consideration or indebtedness. He probably had not' learned that the supreme court rule required proof of consideration ; and, although it is complained that the rule of the supreme court has been misunderstood in that respect, yet I think it may well be inferred from its decisions and opinions that all that would be required, to take a case out *299 of the statute, was proof that delivery «was impracticable. £1 Nothing can take a case out of the operation of the statute, unless the attempted explanation relate to the possession of the property.” u There must in all cases, where practicable, be a change of possession.” (20 Wendell, 521.) The only question of fact here, is about the possession.” (19 Wend. 444.) At all events, in the present case, the circuit judge, whose decision is approved by the supreme court, seemed so to understand the rule, and in his charge, without a word about proof of consideration, he twice distinctly told the jury that if they found any good reason, for the possession not being changed, their verdict wiz¿s¿ be for the plaintiff, otherwise it would be for the defendant.
Although I think the verdict wrong, yet with the bona fd.es of the case we have nothing to do. Tpiiey are for the jury to find whenever they shall have an opportunity to do so upon a full consideration of the case. I think the judge intended to .restrict them in their consideration of the case to the mere reasons for non-delivery of possession, or at least that the jury might reasonably have inferred so from the charge, and probably so understood it. I also think that the charge in this respect, in connection writh the refusal to alter it under the first instruction, was sufficiently excepted to, and that the judgment of the supreme court should be reversed.
B radish, President.
This case involves the interpretation of the statute in regard to u fraudulent conveyances, and contracts relative to real and personal property.” Few subjects in the law have been more variously considered, or have received a greater diversity of construction and application, by courts and judges, than this. It should, therefore, perhaps be less a matter of surprise, than it certainly is of deep and just regret, that this subject has, for some years past, divided the opinions of this, and the supreme court of the state. This difference between the courts, however, has unfortunately of late assumed the character, to say the least, of an animated conflict of opinion ; and has been adhered to with a pertinacity, which is not *300 merely matter of regret, but which, as seems to me, is entirely inconsistent with the theory, as it is unfriendly to the harmonious and salutary action of our judiciary system. It is equally unfavorable to the final and satisfactory settlement of the law upon an important and interesting subject. And yet, in principle, the line which thus unfortunately divides the opinions of the two courts, seems to me to be a very narrow one. The statute provides that, “ Every sale made by a vendor of goods and chattels in his possession, or under his control, and every assignment of goods and chattels by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged, or assigned, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith ¿ and shall be conclusive evidence of fraud, unless it shall be made to appear, on the part of the persons claiming under such sale or assignment, that the same was made in good faith, and without any intent to defraud &c.” (2 R. S. 136, § 5.) The 4th section of the next title further provides that, u The question of fraudulent intent, in all cases arising under the provisions of this chapter,shall be deemed a question of fact, and not of law.”
The doctrine of the supreme court, as I understand it, is that, in the case contemplated by the statute, proof of good faith and of the absence of an intent to defraud, merely removes the conclusiveness of the evidence of fraud, leaving it still incumbent on those claiming under the sale or assignment to account satisfactorily to the court for the non-delivery of possession ¡ and thus rebut the presumption of fraud which the statute raises from that fact. That this can only be done by showing that delivery of possession was impracticable. This latter proof, indeed, is held to be an indispensable preliminary requisite to the submission of the question of good faith to a jury.
This court, on the contrary, holds that the evidence which *301 would be sufficient to show good faith and an absence of intent to defraud, would also conclusively rebut the presumption of fraud which the statute raises from the non-delivery of possession ; and that no additional testimony, therefore, is necessary to account for such non-delivery of possession ; indeed, that the former cannot be fully shown, without its satisfactorily accounting for the latter.
It seems to me that the doctrine of this court is entirely sound in principle, and is in strict conformity with the terms and the intent of the statute ; while that of the supreme court appears to me erroneous in both these respects. The latter would seem to proceed upon the ground, sometimes indeed asserted by judges, that the vendee or assignee of chattels leaving them in the possession of the vendor or assignor, is in itself fraud. This appears to me to violate a vital principle of property. A full and free power of disposal of chattels is an essential and inherent incident of ownership ; and the vendee or assignee of such chattels has the same right to leave them in the possession of the vendor or assignor, that he would have to take them into his own, or place them in the possession of a third person. If, however, the vendor be suffered to retain possession, the statute, from motives of public policy, declares that the sale or assignment so unaccompanied by an immediate delivery, and not followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void as against creditors and subsequent purchasers ; and shall be conclusive evidence of fraud, unless it shall be made to appear that the same was made in good faith, and without any intent to defraud. Now what the statute does, in this case, is to raise a presumption of fraud, which becomes conclusive, unless good faith and absence of intent to defraud be made to appear. But if the sale or assignment be shown to have been made in good faith, and without any intent to defraud, (he presumption of fraud raised by the statute is fully rebutted. There can be no presumption of fraud in a transaction which has been proved to be without fraud. To call upon a party, therefore. *302 who had already proved the good faith and absence of intent to defraud of a sale or assignment of chattels, to produce further testimony to remove the mere statutory presumption of fraud, would seem to be worse than a work of supererogation : it would be to suppose the possible existence of the shadow, after the substance itself had ceased to exist.
1. The doctrine of this court is in conformity with the terms of the statute. Whatever may have been previously the uncertainty of the law upon this subject, the language of this statute is clear, explicit and unequivocal. It would seem to be hardly susceptible of two interpretations. A legislative enactment, both in its terms and its provisions, could scarcely be more clear and unambiguous than this; or more perfectly in harmony with the interpretation it has received in the doctrine held by this court. It declares explicitly what shall raise the presumption of fraud, and in what case this presumption shall become conclusive evidence of fraud. With equal explicitness does it declare what shall remove or avoid the conclusiveness of this evidence, and thus rebut the presumption of fraud raised by the statute. It very wisely, as I think, has not undertaken to define precisely what evidence shall be sufficient to prove good faith and absence of intent to defraud. This must necessarily vary with the ever-varying circumstances of each individual case. The statute, therefore, has left this, like every other fact or question of intent, to be determined by the jury, under the direction of the court, from the legal, competent, and relevant testimony presented to them according to the ordinary and established rules of evidence. To this end it has made such fraudulent intent a question oí fact ¡ and not oí law.
From the declaration of the statute that the facts enumerated therein shall be conclusive evidence of fraud, unless it shall be made to appear that the sale or assignment was made in good faith, and without any intent to defraud, the legal inference, as well as that of common sense, is, I think, irresistible, that if it be thus made to appear, those facts shall not be conclusive evidence of fraud ; and that the presumption of fraud raised *303 therefrom shall be thus fully rebutted. The statute does not go on to provide that, in addition to proof of good faith and absence of intent to defraud, the party claiming under such sale or assignment shall also be held to show, by reasons to be approved by the court, why there had not been an immediate delivery, and an actual and continued change of possession : much less does the statute make such proof an indispensable preliminary requisite to the admission of proof of good faith and the absence of an intent to defraud j nor does it require that££ the question of bona fides should, be withholden from, the jury, where the parties have refused to change the possession, if change were within their power.” This is the law of the courts, not of the statute. In the opinion of the supreme court in the case of White v. Cole & Thurman, (24 Wend. 116,) the learned judge who prepared that opinion, presents the following interrogatory and answer : “ Does the statute, (2 R. S. 72, 2d ed., § 4,) when it declares fraudulent intent to be a question of fact, leave it to be tried, like other cases of intent, on facts pertinent in the opinion of the judge, according to the general rules of evidence 1 We have heretofore given one uniform answer to this enquiry. We have withholden the question of bona fides from the jury, where the parties have refused to change the possession, if change were within their power. We have considered delivery as the form put forward by the statute to test the honesty of the transaction.” It has also been said by another judge of the same court, (Butler v. Van Wyck, 1 Hill, 455,) When that (change of possession) is wanting, the statute is so far from allowing that there can be good faith towards creditors and purchasers, that it declares the transaction, as to them, fraudulent and void ;” and again, ££ without altering the'language of the statute, there-is, I think, no way in which this presumption can be got rid of, so long as the fact out of which it springs—unchanged possession—continues to exist.” ££ Nothing can take a case out of the operation of the statute, unless the attempted explanation relate to the possession of the property.”
*304 The doctrine thus laid down by two of the judges of the supreme court, seems to me artificial, far too restricted, and inconsistent with both the terms and intent of the statute. In the case contemplated dy the statute, the statute itself prescribes, as the only requisite, proof of good faith and absence of intent to defraud. The burden of such proof is very properly thrown upon those claiming under the sale or assignment. In weighing the evidence offered of such good faith and absence 'of intent to defraud, the jury may very properly consider any good reasons which may be presented to them for the non-de livery of immediate possession. Such reasons may, and gen erally will, form a part of the evidence which goes to show good faith and the absence of an intent to defraud ; but it is, by no means, the only evidence for that purpose. Nor can I admit, as seems to be insisted on in the doctrine held by the supreme court, that such reasons are an indispensable preliminary requisite to the admission of other testimony ; or that, without such reasons, all other testimony, however satisfactory in itself it may be in other respects, is still insufficient to prove what the statute requires, and to rebut the presumption of fraud which it raises. Much less can I admit the soundness of a doctrine that would withhold from the jury a jurisdiction expressly given to it by the statute, and which allows the court to usurp the prerogative of deciding not only upon the competency and relevancy of testimony, but also upon its weight and sufficiency, in the very, case contemplated by the statute, and upon the very question expressly declared by that statute to be a question of fact and not of law. This would be to repeal the statute, and to substitute in its place, law which, I think, the legislature has neither enacted nor intended to enact. To say too, that when a change of possession is wanting, the statute is so far from allowing that there can be good faith towards creditors and purchasers, that it declares the transaction, as to them, fraudulent and void, seems to me to be in the highest degree contradictory and absurd, and wholly wanting in that legal acumen and general logical *305 accuracy which usually so strongly characterize the mind from which the observation emanated; When the statute says, that a sale or assignment of chattels, unaccompanied by an immediate delivery and not followed by an actual and continued change of possession, shall be presumed to be fraudulent and void, and conclusive evidence of fraud, unless good faith and the absence of an intent to defraud be made to appear, the statute, in its very terms, necessarily supposes the possible existence of good faith, ahd the absence of an intent to defraud, notwithstanding the want of an immediate delivery and an actual and continued change of possession; and it as necessarily implies that, when such good faith and absence of intent to defraud shall be made to appear, the presumption and conclusive evidence of fraud which the statute raises from the facts stated, shall be fully rebutted and cease to exist. This seems to me most clear from the very terms of the statute ; and such is the doctrine of this court. That doctrine is, therefore, irt conformity with the terms of the statute.
2. The doctrine of this court is also in harmony with the intent of the statute, To arrive at the true intent and meaning of this statute, it is hardly necessary to go beyond its own phraseology ; so clear, explicit and unambiguous is the language in which its provisions are expressed. Yet that plain and obvious intent is rendered still more palpable by the history of the law previous to the passage of this statute, and by the circum stances which attended its enactment.
Our statute of 1830, (2 R. S. 136, § 5, id. 137, § 4,) embraces the provisions, somewhat modified and enlarged, of the statutes of 50 Edw. 3, ch. 6, 3 Hen. 7, ch. 4,13 Eliz. ch. 5, and 27 Eliz. ch. 4. For more than two centuries after the passage of the statutes of the 13 and 27 Eliz., evert down to near the middle of the reign of George the third, the prevailing doctrine of the courts of Westminster Hall, with few apparent exceptions, was, that those statutes, in the cases contemplated by them, and upon the facts therein stated, raised only a prima facie pre-. sumption and not conclusive evidence of fraud; and that this *306 of course might be rebutted by testimony : that the question of fraud was therefore one of fact for the-yury, and not an inference of law to be drawn by the courts.
It is true that, during this period, efforts were occasionally made by individual judges to introduce the harsher rule, and consider voluntary conveyances and sales of chattels, unaccompanied by delivery of possession, as in all cases conclusive evidence of fraud, not to be explained or rebutted; but that the fraud was a necessary inference of law to be drawn by the court from the single fact alone that the conveyance was voluntary, or the sale unaccompanied by a delivery of possession. The acknowledged exceptions to this severe rule soon became so numerous as to destroy the rule itself, when the courts again fell back upon the milder and more reasonable rule of prima facie presumption, and the consequent jurisdiction of the jury. Some indeed went so far as to consider voluntary conveyances, and sales and assignments of chattels, unaccompanied by a change of possession, as fraudulent per se. Others attempted to draw a distinction between absolute bills of sale and conditional assignments by way of mortgage, insisting that, in the former case, non-delivery of possession was conclusive evidence of fraud : while, in the latter, it is only prima facie evidence of fraud, during the period within which the condition was to be performed, on the ground that for this period the continued possession in the mortgagor was consistent with the deed. But that, on the expiration of that period, the case of a conditional assignment or mortgage was subject to the same rule as an absolute bill of sale ; on the ground that the continued possession of the conditional assignor, or mortgagor, had then become inconsistent with the deed.(a)
But these ultra doctrines and artificial distinctions had only a transient existence. They soon disappeared, and gave place to the much more rational and sound doctrine that puts all *307 these cases on the same uniform ground of intent; as in the cases of Cadogan v. Kennett, (Cowp. 432,) and Doe v. Routledge, (id. 705.) In the former, (p.434,) Lord Mansfield said, <£ the statute does not militate against any transaction bona fide, and where there is no imagination of fraud. And so is the common law.” And further: ££ The statute 27 Eliz. c. 4, does not go to voluntary conveyances merely as being voluntary, but to such as are fraudulent.” This was • the earlier, and, as seems to me, the true doctrine. So Lord Ellenborough, in Doe v. Manning and another, (9 East, 59, 63,) where he collected and reviewed the cases under the 13th and 27th Eliz., observed that, in the cases ££ which arose nearest the time of passing the statute, (27 Eliz.) the judges seem to have held that a voluntary settlement was only prima facie fraudulent against a purchaser j” and that, by a reference to the cases, it would appear that it was matter of evidence to the jury, on which they passed, whether a voluntary conveyance, as such, was fraudulent. The same principle is applicable to both statutes. In favor of the principle may be arrayed, among others, the names of Lord Hale, Lord Rolle, Lord Holt, Ch. Baron Gilbert, Ch. Justice Eyre, Lord Mansfield, Sir William Blackstone, Lord Eldon, Lord Ellenborough, and Lord Tenterden; and against it Lord Hardwicke, Ch. Justice DeGrey, and Justice Buller. The latter, in the case of Edwards v. Harben, (2 T. R. 587,) did, more strongly perhaps than any of his predecessors or successors, lay down the strict general rule, that possession must aceompany and follow the deed: that, therefore, where the conveyance is absolute, the possession must be delivered immediately, but where it is conditional, it will not be rendered void by the vendor continuing in possession till the condition be performed ; thus recognizing the distinction before attempted to be drawn between absolute and conditional conveyances. The doctrine of this case, however, has neither been always considered as sound law, nor uniformly followed as such, even m England. On the contrary, it has been often questioned. In Steward v. Lombe, (1 Brod. & Bing. 506,) de *308 tided in 1820, the doctrine of Edwards v. Harben was very strongly questioned and dissented from by Ch. J. Dallas and Justice Parke; and still more so in later decisions. Even Justice Buller himself, in Haselinton v. Gill, (3 T. R. 620, note,) says ; It has been frequently determined that possession alone is not evidence of fraud; the transaction must be shown to be fraudulent from other circumstances.” This case was tried at the Guildhall sittings after Easter term 1784, before Justice Buller, was carried up to the king’s bench, and decided by Lord Mansfield Ch. J., Ashhurst, Grose and Buller, Justices. Ch. J. Savage understood the case of Edwards v. Harben as differing from Twyne’s case only in that it made nondelivery of possession, unexplained, sufficient, per se, to characterize the transaction as fraudulent; whereas in Twyne’s case, that was combined with other indicia of fraud. He states the general rule to bej that u possession by the vendor or mortgagor, after forfeiture, is prima facie evidence of fraud; but that such possession may be explained, and if the transaction be shown to have been upon sufficient consideration, and bona fide, that is, without any intent to delay, hinder or defraud creditors or others, then the conveyance is valid, otherwise not.” Continued possession in the vendor or mortgagor (C is a badge of fraud. That is not denied and never has been since Twyne’s case.” (Hall v. Tuttle, 8 Wend. 375.) Chancellor Kent, after a careful examination of the cases, and a full consideration of the whole subject, says : “ The conclusion from the more recent English cases would seem to be, that though a continuance in possession by the vendor or mortgagor be prima facie a badge of fraud, if the chattels sold or mortgaged be transferable from hand to hand, yet the presumption of fraud arising from that circumstance may be rebutted by explanations showing the transaction to be fair and honest, and giving a reasonable account of the retention of the possession. The question of fraud arising in such cases, is not an absolute inference of law, but one of fact for the jury.” (2 Kent’s Com. 620, 2d ed.)
*309 Such is briefly the history and present state of the law upon this subject in England. It has been, if possible, still more fluctuating and unsettled in this country. The supreme court of the United States, in the case of Hamilton v. Russell, (1 Crunch, 309,) adopted the leading principle of the case of Edwards v. Harben, leaving open, however, the question between absolute sales and conditional assignments, and also the case where a continuance of the possession in the vendor or assignor is consistent with the deed. This decision has been adopted and generally followed by the subordinate courts of the United States, so that it may perhaps be considered as the settled doctrine of the federal judiciary, with some recent and pretty strong exceptions. Among these is the opinion of Justice Thompson in the case of Hinde's Lessee v. Longworth, (11 Wheaton, 213.) The doctrine of Edwards v. Harben has also been adopted and followed in several of the states, particularly Virginia, Kentucky, Pennsylvania and Connecticut. But the contrary doctrine has been strongly and uniformly held in North Carolina, New-Hampshire, and Massachusetts, where the subject seems to have undergone a full and careful examination.
In North Carolina, in Vicks v. Keys, (2 Hayw. 126,) Falkner v. Perkins, (id. 224,) Trotter v. Howard, (1 Hawks’ Rep. 320,) and in Smith & Stanley v. Niel and others, (id. 341,) Judges Taylor, Johnson and Hall, held, that the not taking possession immediately of goods conveyed by a bill of sale, is not of itself fraud, but evidence only of fraud, and may be accounted for by evidence; and that that question properly and of right belongs to the jury.
In New-Hampshire, in Haven v. Low, (2 N. H. R. 13,) Woodbury, J. says: ic As a general principle, fraud is a question of fact; or, at the farthest, is a mixed question of law and fact.” In conclusion, he adds: ec Possession of property being retained by the vendor after a sale, is not per se a fraud ; but, in the language of Lord Mansfield, (1 Burr. 484,) ‘'being only evidence of fraud may be explained.’ The whole circumstances should be submitted to the jury.” In Coburn v. Pickering, (3 N. H. R. 415, 425,) Richardson, Ch. J. says:
*310 After a most attentive and careful examination of the books on this subject, we have not been able to entertain a doubt, that the true rule to be deduced from all the adjudged cases is, that when the sale is absolute, possession and usé of the goods afterwards, by the vendor, is always ¡primafacie, and, if unexplained, conclusive evidence of a trust.” “ When the question is, was there a secret trust 1 it is a question of fact. But when the fact of a secret trust is admitted, or in anyway established, the fraud is an inference of law which a court is bound to pronounce.” (Id. p. 428.) “ Twyne’s case, in substance, contains the rule we have laid down.” (Id. p. 427.) Referring to the case of Haven v. Low, he adds: “ The decision was in perfect accordance with the rule we have laid down; for when the court say that possession of the goods is not conclusive evidence, all that is intended is, that it may be rebutted or explained.” “We have no hesitation in saying, that there is no contradiction in the decisions on this point. All the cases are reconciled by the distinctions we have stated.” This case seems to have been ably argued, and deliberately and well considered. In Ash v. Savage, (5 N. H. R. 545, 547,) Richardson, Ch. J. says, that “ possession by the mortgagor may in some cases be evidence of fraud, but is never fraud in law, or conclusive evidence of fraud.”
In Massachusetts, in Brooks v. Powers, (15 Mass. R. 244,) the court say : “ It has been contended in this case, that the possession of the vendor of personal chattels after the sale, is conclusive evidence in favor of creditors that the sale was fraudulent ; or rather that it is itself a fraud. But we are all of opinion that, although it is generally evidence of the strongest kind* it is not conclusive.” In Bartlett v. Williams, (1 Pick. 288, 295,) Putnam, J. says : “ It is certainly a general rule, that possession must accompany and follow the deed ; and that the possession of the vendor after the bill of sale, unexplained, would render the conveyance void as against creditors. But such a possession may be explained, and be perfectly consistent with justice.”
*311 In relation to our own state, Chancellor Kent remarks : “ In New-York, the current language of the court originally was, that the non-delivery of goods at the time of the sale or mortgage, was only prima facie evidence of fraud, and a circumstance which admitted of explanation.” (2 Kent’s Com. 526, 2d ed.) See Barrow v. Paxton, (5 John. R. 258,) where it was held that possession continuing in the vendor was only prima facie evidence of fraud, and might be explained. See also Beals v. Guernsey, (8 John. R. 446, 452,) where the court say : (< The non-delivery of the goods at the time of the sale is of itself a circumstance of fraud, as was stated in Twyne’s case ; but it is only prima facie evidence of fraud, and the circumstance may admit of explanation.” 66 The question of fraud depends uponiAe motive.” This seems to me the true doctrine, especially under the statute of 1830. But in Sturtevant v. Ballard, (9 John. R. 337, 344,) Kent, Ch. J. would se.em to have intended to establish the stricter rule, when he declared, that u a voluntary sale of chattels with an agreement, either in or out of the deed, that the vendor may keep possession is, except in special cases, and for special reasons, to be shown to, and approved of by the court, fraudulent and void as against creditors.” Chief Justice Savage, however, does not understand the decision in this case as having altered the law ; but that the exception therein of special cases, and for special reasons,” left the evidence of fraud open for explanation, and, therefore was not conclusive; and that the case, therefore, did not go beyond the previous ones of Barrow v. Paxton and Beals v. Guernsey. It is evident, however, I think, from Chancellor Kent’s language in his commentaries, that he himself intended, in the decision of Sturtevant v. Ballard, to adopt a more strict rule than had been previously recognized by the courts of this state ; and that he supposed the court had, in its decision of that case, accomplished such purpose.
The doctrine of this case was not followed in Dickinson v. Cook, (17 John. R. 332,) where Yates, J., who delivered the opinion of the court, recognized, as a general principle of *312 law, that a continued possession of goods by a vendor is prima facie evidence of fraud. But Bissell v. Hopkins, (3 Cowen, 166,) as Chancellor Kent himself admits in his commentaries, entirely subverted the doctrine of Sturtevant v. Ballard, and declared that, in retaining possession after sale,- there was neither fraud in law, nor fraud in fact; that there was only prima facie evidence of fraud, which might be explained. In Butts v. Swartwood, (2 Cowen, 431,) and Jackson v. Mather, (7 Cowen, 304,) continued possession was held to be only prima facie evidence of fraud. Stutson v. Brown, (7 Cowen, 732,) was a case of actual fraud. In the case of Seward v. Jackson, (8 Cowen, 406,) in this court, Senators Spencer and Allen held fraud to be a question oí fact and not of lata. The former put himself, among other authorities, on the opinion of Justice Thompson in Hinders Lessee v. Longworth, cited above.- Senator Spencer (p.-435,) says : “ Strictly speaking, there is no such thing as fraud in law; fraud or no fraud is, and ever must be a fact. The evidence of it may be so strong as to be conclusive ; but still it is evidence, and, as such, must be submitted to a jury.” In Jennings v. Carter, (2 Wend. 446, 449,) Marcy, J., says ; 6‘ It is well settled that explanations may be given, which will effectually repel the presumption of fraud arising from continuance of possession in the vendor.” In Divver v. McLaughlin, (2 Wend. 596,) Savage, Ch. J. held, that possession of personal property by the vendor or mortgagor inconsistent with the deed, was prima facie evidence of fraud, but subject to explanation. In these last two cases, the explanations offered were insufficient. The opinions of Senators Spencer and Allen, in Seward v. Jackson were afterwards followed by the supreme court in Jackson v. Peck, (4 Wend. 300,) and in Jackson v. Timmerman, (7 Wend. 436.)
Such is briefly the history, and such Was the fluctuating and unsettled state of the law upon this subject, when the statute in question Was passed. It cannot therefore well be perceived, how it could with correctness be said or implied, as it was in Butler v. Van Wyck, that there had been a “ unifotm current *313 of judicial authority from Twyne’s case, in the reign of Elizabeth, down to, but not including Smith & Hoe v. Acker, decided by the court for the correction of errors ;” or, as was said in the same case, with reference to the principle in discussion, that it was “ a question which had passed through all the courts of the state with a uniform result.” On the contrary, the ever-varying and often conflicting decisions of the courts, in regard to the principle in question, run through all the books, and show the law upon this subject to have been at that period fluctuating and unsettled.
To reconcile the discrepancies, and, as far as practicable, to harmonize the various and conflicting decisions of the courts, by taking from all whatever they had in common or might contain of sound doctrine and practical principle, and thus finally to settle the law upon this subject, was undoubtedly the object and intention of the legislature in passing into express enactment this portion of the revised statutes. This conclusion would naturally be drawn from the very terms of the statute, which are clear and explicit. But the conclusion is fortified by the orignal notes of the revisers, which accompanied this portion of the revision when it was presented by them to the revising legislature. This object, at the time, was supposed to have been fully accomplished. So it was then and has since been viewed by some of the best legal minds in the state. Chancellor Kent, referring to the previously fluctuating and unsettled state of the law upon this subject, says : “ The New-York revised statutes have put this vexatious question at rest.” “ The doctrine now established by statute, is evidently as high-toned as any that the courts of justice in this country can, by a permanent practice, sustain ; and it contains this inherent and redeeming energy, that the fact of withholding possession raises the presumption of fraud, and the burden of destroying that presumption is thrown on the vendee or mortgagee.” (2 Kent’s Com. 529, note.) So in Hall v. Tuttle, (8 Wend. 375,) one of the earliest cases that arose under the revised statutes, and *314 which, with the whole law upon the subject, was very elaborately considered by Ch J. Savage, he says : (p. 379,) “ If I am right in supposing that the rule laid down in Sturtevant v. Ballard amounts to no more than that possession remaining in the vendor is prima facie evidence of fraud, then there is no discrepancy between the cases in this court; they all maintain the same doctrine ; and so have the legislature pronounced the law to be from and after January 1, 1830. (2 R. S. 136, § 5.) This legislative enactment contains what I understand the law to have been ever since the 13th Eliz. ch. 5, and what the common law was before that statute was enacted.”
Such are the views of two distinguished legal minds, of the provisions and effect of the statute in question. Indeed, so plain is the language, and so palpable the objects of this statute, that it would seem to be as impossible to mistake the one as to misinterpret the other. And yet, as was remarked by a late distinguished member of this court, “ This legislation has merely afforded a new and remarkable proof of the imperfection of human language and the impossibility of definitely settling any great rule of law for the complicated affairs of human life, merely by the general language of a statute or the provisions of a code.” It would seem to me, however, that the differences in opinion, and the conflicting interpretations of this statute, have arisen rather from strongly preconceived notions of what the public interests and a sound public policy required it to be, than from any ambiguity or uncertainty either in the terms or the provisions of the statute itself. It has been an adherence to what, in individual opinion, the law should be, rather than a fair and just interpretation of what the legislature has actually made it. The opinion has been entertained and strongly expressed, that the public interests as well as good morals, would have been promoted by a declaration, fifty years ago, of the rule of law, that all sales and assignments of chattels, by way of mortgage, of which the possession, Under any pretence whatever, is retained by the vendor or mortgagor, should be deemed to be absolutely fraudulent and void as *315 against creditors and subsequent purchasers •, that nothing short of such a rule can effectually reach the evil against which the statute was directed ; and that such a rule would be one of a most salutary tendency. It certainly is not surprising that a judge, honestly holding such doctrines as sound principles of public policy, with a view to their utmost application, should, in every case coming before him for adjudication, push his severe, and, as seems to others, ultra interpretations of the statute, to the utmost verge of legal sanction, and carry their application to the very farthest limit which the circumstances of the case wrould possibly permit. Such would naturally be the honest and ardent tendency of his mind. And it may well be, therefore, that this honest impulse may have led, unconsciously doubtless, to the endeavor to supply, by judicial interpretation, what is imagined to be defective in the legislative enactment. But the question is not what ought tobe, but what is the law 1 The former is for the exclusive consideration of the legislative power; while the latter only can be regarded by the judiciary. It is to be feared that this sound principle has not always been sufficiently observed. For although in the earlier cases of Hall v. Tuttle, Cunningham v. Freeborn, Gardner v. Adams, and some others, the statute received an interpretation in conformity with its palpable import, yet so early as the case of Doane v. Eddy, in 1837, the supreme court, (Ch. J. Nelson, dissenting,) put themselves back upon the severest rule of some of the old decisions, and advanced a doctrine which seems to me as inconsistent with the terms, as it is with the true intent of the statute. In the dissenting opinion of the chief justice, however, the statute received, in few words, a very full, just and satisfactory interpretation. The doctrine of the supreme court in that case was more fully developed, enforced and followed in Randall v. Cook, (17 Wend, 53,) in Wood v. Lowry, (id. 492,) and again in Beekman v. Bond, (19 Wend. 444,) where, in addition to the severe rule adopted in the previous cases, the court, by a restricted application of the fourth section of the third title of the statute, put *316 forth a doctrine that would deprive the jury of an expressly granted jurisdiction, in violation, as seems to me, of the clear language, and most manifest intent of the statute. This doctrine, too, is attempted to he sustained by a course of reasoning as remarkable, certainly, as its conclusions appear to be erroneous. The learned judge who delivered the opinion of the court in Beekman v. Bond, says : “ The fifth section of title two declares, in substance, that, as against creditors and purchasers, every sale and conveyance of goods, without a change of possession, 1 shall be presumed to be fraudulent and void.’ The only question of fact here is about possession. The provision is not, that a conveyance of goods made with a fraudulent intent, shall be void 5 but that a conveyance of goods without a change of possession, shall be void. Is the fraud in such cases a question of fact 1 Let the statute answer. The transaction c shall be presumed to be fraudulent and void.’ This is the language of the law, and except under special circumstances, a jury has nothing to do with the question.” The same learned judge in the recent case of Butler v. Van Wyck, (1 Hill's R. 455,) thus explains himself: “ In Beekman v. Bond an attempt was made to show that this provision [2 R. S. 137, § 4,] had ample scope for operation without touching, and that it did not in fact touch, this point. It is not only enacted that conveyances made with afraudulent intent shall be void, but the legislature has gone further, and singled out and seized upon that common and strong badge of fraud—continued possession in the vendor or mortgagor— and declared, that without an immediate delivery, the transfer 6 shall be presumed to be fraudulent and void.’ The law itself makes the inference, and nothing is left for a jury.”
From the above, one might be led to suppose that the learned judge must have looked for the matter upon which he thus comments, in the original reports of the revisers, and not in the statute book; for it is believed that the latter contains no such absolute or unqualified propositions as are above stated. Such is not the law “ written in the statute book.” There is in the statute no where to be found, even in substance, the ab *317 solute and unqualified provision “ that, as against creditors and purchasers, every sale and conveyance of goods without a change of possession, shall be presumed to be fraudulent and void.” Nor is there in substance or in spirit a provision “ that a conveyance of goods, without a change of possession, shall be void ;” or that,££ without an immediate delivery, the transfer shall be presumed to'be fraudulent and void.” This is not the language of the law. But the statute does, in substance, provide that every sale and assignment of goods and chattels by way of mortgage or on any condition whatever, unless accompanied by an immediate delivery, and followed by an actual and continued change of possession, shall be presumed to be fraudulent and void as against creditors and subsequent purchasers, and shall be conclusive evidence of fraud, unless it be made to appear on the part of those claiming under such sale or assignment, that the same was made in good faith, and without any intent to defraud such creditors or purchasers.
Now, the concluding qualification of this provision of the ¡Statute is an essential part of the two propositions which the provision contains—1st, as to the presumption ; and 2d, as to the conclusive evidence of fraud. Neither of these two propositions is absolute, but both are made sub modo. Without their expressed condition or qualification, they would represent neither the truth nor the law 5 neither what the legislature has expressed, nor what it intended. It is true, that the revisers originally presented the first of these propositions as the learned judge has stated it, without qualification. But the revising legislature, after much discussion and deliberation, added the second proposition and the qualification; thus essentially changing the law from that which was proposed by the revisers. It was undoubtedly with reference to this difference between the original proposition of the revisers and the statute as finally enacted by the legislature, that the distinguished senator above quoted says: ££ The decisions in this state since the statute of 1830, have, it seems to me, been more in the spirit of the learned revisers, than in that of the enacting sovereign power.” *318 But in Beckman v. Bond, the learned judge adds : “ To my mind it is quite clear that the legislature did not intend, on one page of the statute book, to declare, as matter of law, that a particular transaction should be presumed fraudulent; and then, on the next page, to say that the fraud should be a question of fact and not of law. There is no necessity for giving a construction to the statute which will involve such a contradiction.” Certainly not. Read the statute as it was enacted, and all will be harmonious. The whole provision of the fifth section of title two must be taken together. The qualification with which it concludes contains a question of good faith or fraudulent intent, which is to determine the character and effect of the sale or assignment under the two preceding propositions of the provision. This question of fraudulent intent goes to the whole provision of the section. And this is one of the questions of fraudulent intent, which, by the fourth section of title three, are expressly declared to be “ questions of fact, and not of law.” As Chief Justice Nelson; in Doane v. Eddy, very properly says, “ the fraudulent intent referred to in section four (of title three) means-the intent to defraud mentioned in section five, (of title two.)” How then can ‘it be said that, u except under special circumstances, a jury has nothing to do with the question or that “ the law itself makes the inference, and nothing is left for a jury.” In the language of the learned judge, “ To my mind it is quite clear that the legislature did not intend, on one page of the statute book, to declare, as matter of law, that a particular transaction should be presumed fraudulent; and then, on the next page, to say that the fraud should be a question of fact and not of law.” But the latter, the legislature certainly has expressly said, and undoubtedly intended. The former- is merely an inference of the learned judge ; and is believed to be wholly unwarranted by either the terms, or the intent of the statute. The revisers undoubtedly intended to, and did so present the law ; but the legislature did not so enact it. They subjected the general proposition as to fraud, to the qualifying condition of good faith, or fraudulent intent; and declared that *319 fraudulent intent to be a question of fact and not of law. The supposed contradiction of the statute, therefore, will thus be found, upon a careful examination and just interpretation of its provisions, not to exist.
This new statute, while it adopts, under qualification, the severe principle of u conclusive evidence of fraud,” laid' down in some of the modern cases, at the same time declares what shall remove the conclusiveness of this evidence, and sufficiently rebut the prima facie presumption of fraud; viz. the party claiming under the sale or assignment making it appear that the same was made in good faith and without any intent to defraud. The statute too, in declaring, as it does, in the fourth section of its third title, that the question of fraudulent intent shall be deemed a question of fact, and not of law, has finally settled the long agitated point, whether the question of fraud, in the case contemplated b) the statute, be a matter of fact to be determined by the jury in a court of law, or an inference of law to be drawn bj the court.
In general, this statute, upon due examination and a fair interpretation, will, I think, be foun I to have accomplished the following important, objects, and thus put to rest the vexatious questions long agitated in regard to them, viz. 1. It has abolished the distinction sometimes attempted to be drawn between absolute sales and conditional assignments ; and thus avoided the question whether continued possession in the vendor or assignor be consistent or inconsistent with the deed. 2. It declares what shall rebut the evidence of fraud raised by the statute from a want of change of possession ; viz. good faith, and absence of intent to defraud. 3. It throws the burden of proof of such good faith and absence of intent to defraud, upon the party claiming under the sale or assignment. 4. It declares the question of fraudulent intent to be a question of fact and not of law. Except in these particulars, the statute of 1830 leaves the law, as regards the case now under review, substantially as it found it; for there can be little dif *320 ference between prima facie evidence, and conclusive evidence that may be explained. Practically, they amount to the same thing ; because prima facie evidence, if unexplained, becomes conclusive. Whereas, evidence declared to be conclusive unless explained, is, if unexplained, no more than conclusive ; and if satisfactorily explained, like prima facie evidence, is fully rebutted. The statute very properly throws the burden of proof on the party claiming under the sale or assignment; and while it prescribes what shall rebut the evidence of fraud raised by the statute, and submits that as a fact to be determined by the jury, it leaves the court in the unimpaired possession and exercise of all its proper prerogatives of deciding upon the legality, competency and relevancy of testimony, but not upon its weight and sufficiency on a question declared by the statute to be one of fact. These belong properly to the jury-
The statute has thus clearly defined and fixed the boundaries of the proper jurisdiction of the court and jury; and has thus provided for the harmonious and salutary action of these two departments of our judiciary system, both perhaps equally essential in the due administration of public justice. The statute of 1833 does not materially change the law upon this subject; but .contains some additional provisions in regard to mortgages of chattels. In the case of such a mortgage, unaccompanied by an immediate delivery, and not followed by an actual and continued change of possession of the things mortgaged, it declares the mortgage void, unless the mortgage, or a true copy thereof, be filed as prescribed by the statute, and annually renewed with a statement of the amount due on the mortgage. The object of this provision was undoubtedly to give publicity to the transaction, and thus to put creditors, purchasers and subsequent mortgagees on their guard. So that, in order to give validity and effect to a mortgage of chattels, unaccompanied by a change of possession, the party claiming under it is now held to prove, not only that the mortgage was given in good faith and without any intent to defraud, but also that the *321 requirements of the statute of 1833 have been complied with. This being done, I cannot doubt that it was the intention of the legislature to give eifeet to such mortgage of chattels, even although possession do not accompany or follow the deed. Nor can I doubt that such intention of the legislature has been fully carried out in the provisions it has adopted, and in the language in which they are expressed.
Such are believed to be the provisions of the statute in question ; and such were evidently the objects and intentions of the legislature in passing it. With the terms of the statute thus interpreted, and with these supposed objects and intentions of the legislature in its enactment, the doctrine of this court fully harmonizes. And although the doctrine of the case of Doane v. Eddy, more fully developed in Randall v. Cook, and still more explicitly declared in Butler v. Van Wyck, has been adhered to by two of the judges of the supreme court, down through all the subsequent cases, of Stoddard v. Butler, Smith & Hoe v. Acker, Cole & Thurman v. White, Butler v. Van Wyck, and the case now7 under review here, yet the doctrine of this court may be considered as now finally settled and established; and, as such, has become the law of the state. That doctrine is clearly and well laid dowrn in the dissenting opinion of Nelson, Ch. J. in Doane v. Eddy, in the supreme court; generally in the opinions of Senators Dickinson and Verplanck in Stoddard v. Butler, and in the cases of Smith & Hoe v. Acker, and Cole & Thurman v. White, in this court. In those cases, I think the statute has been correctly interpreted, and the law well settled. That law, until changed, is binding upon this, as it is upon the subordinate courts, and the people of this state. It should, therefore, here at least, be vigilantly and firmly sustained. To this we, at all events, should faithfully adhere. This has become the more necessary and is the more incumbent upon us, since, for the first time in' the history of this court, its controlling powers are drawn into question, and the authority of its decisions denied. If this doctrine, so novel *322 and alarming in itself, had been only casually or carelessly expressed, or had had a humbler origin, it would have carried with it less weight, and would of course be less dangerous. Grave even as it is in its character and tendency, still, under ordinary circumstances, it might safely be left to the sure corrective of sound and enlightened public opinion. But the high personal character and elevated official station of the individual from whom it emanates, as well as the labored and apparently deliberate manner in which it is put forth, are all calculated to give to this new doctrine a credit and currency, which in itself it could never have ; and to aggravate the mischiefs it naturally tends to produce. It ought not, therefore, to pass in silence here. Some notice of it seems to be not merely called for, but forced upon the members of this court, by the highest considerations of public duty, and a just regard for the character and usefulness of the court of which we are members. So long as I have the honor of being a member of this court, my sense of duty will not permit, me to allow even my silence to be construed into an acquiescence in a doctrine that would abridge the legitimate powers, degrade the character, and impair the usefulness of this court; a doctrine too, which I deem as unconstitutional in its principle, and as disorganizing and de structive in its tendency, as it is novel in its enunciation.
The people, in forming the organic law of the government of this state, very wisely foresaw, that in its action and progress, questions of interpretation, of the settlement of legal principles, and of their application, would frequently arise; and thence the necessity of constituting some tribunal, with general appellate and supervisory powers, whose decisions should be final, and conclusively settle and declare the law. This was supposed to have been accomplished in the organiza* tion of this court. Heretofore this court, under the constitution, has been looked to by the people as the tribunal of last resort in the state; and it has hitherto been supposed, that when this-court had decided a case upon its merits, such decision not only determined the rights of the parties litigant in that par *323 ticular case ; but that it also settled the principles involved in it, as permanent rules of law universally applicable in all future cases embracing similar facts, and involving the same or analogous principles. These decisions thiis became at once public law, measures of private right and landmarks of property. They determined the rights of persons and of things. Parties entered into contracts with each other with reference to them as to the declared and established law; law equally binding upon the courts and the people. But the doctrine recently put forth would at once overturn this whole body of law founded upon the adjudications of this court, built up as it has been by long continued and arduous labors, grown venerable with years, and interwoven as it has become with the interests, the habits, and the opinions of the people. .Under this new doctrine, all would again be unsettled—nothing established. Like the ever returning but never ending labors of the fabled Sisyphus, this court, in disregard of the maxim of “ stare decisis,” would, in each recurring case, have to enter upon its examination and decision as if all were new ; without any aid from the experience of the past, or the benefit of any established principle or settled law. Each ease, with its decision being thus limited as law to itself alone, would in turn pass away and be forgotten, leaving behind it no record of principle established, or light to guide, or rule to govern the future.
Such is the condition to which this novel doctrine, if practically adopted, would reduce us—a condition which a former distinguished member of this court, borrowing the language of an ancient writer, well and forcibly described as marking a. miserable people, “ where the laws are vague and uncertain.” But there is another aspect of this novel doctrine which seems to me still more alarming and destructive. It is said, that “ it would be strange indeed if other courts were bound to follow them [the decisions of this court] at all events, and without looking into the reasons on which they stand.” Again, “ the decisions of that court, [the court of errors,] although final as between the parties litigant, are so far from being conclusive *324 by way of authority, that they are entitled to much less weight than the judgments of those courts which consider themselves bound by legal adjudications.”
To see the supreme court engaged in passing in review a decision of this court, in order, by an examination of its “ reasons,” to ascertain whether it will adopt its principle as a rule of law, would certainly be a very novel spectacle. This would be reversing the order of proceeding contemplated by the constitution. But suppose this, however disorderly it may appear, to be attempted, let us see what would be its practical result. This court decides a case between A. and B. The supreme court has a case before it between C. and D., analagous in its facts and principles. The supreme court takes up the decision of this court, reviews its reasons, finds them unsatisfactory, and comes to the conclusion that the decision is bad law, or rather, that “ it is no law at all';” and of course not binding as an authoritative precedent. The court, therefore, proceeds to decide the case in hand in opposition to it. The case is then brought up to this court by writ of error. This court, following its own precedent laid down in the case of A. and B., reverses the judgment of the supreme court in the case of C. and D.; and this, even according to this new doctrine, is binding and conclusive between the parties litigant. Now, what has been accomplished by the supreme court thus refusing to acknowledge as a precedent the decision of this court in the case of A. and B., and to apply it as a rule of law in its own decision of that of C and D.1 Literally nothing, except to subject the parties to increased expense, and to illustrate the absolute futility of a doctrine as impracticable in its purpose as it is unconstitutional in its principle and disorganizing in its tendency and effect. Extend this novel doctrine to the subordinate courts, and what would be the spectacle there presented, and the consequences that would inevitably follow 1 The circuit courts and courts of common pleas, instead of receiving and following as authoritative precedents, the decisions of the supreme court, acquiesced in-by the parties, would be occupied in *325 reviewing those decisions, examining their reasons, and either recognizing or rejecting the former as they find the latter satisfactory or otherwise. The justices of the peace too, and their courts, would be similarly occupied in regard to the decisions of the courts of common pleas ; and thus the subordinate courts generally, released from the controlling and conservative principle to which they have very wisely been subjected by the constitution and the laws, would, under this new doctrine, instead of forming as at present dependent parts of one harmonious whole, become not only wholly independent of each other, but conflicting in their powers and their action. The authority of law and the constitution would thus be subverted, the course of things reversed and retrograde, and every thing tend to disorder, confusion and ruin.
Again, it is said-that the decisions of this court “ are so far from being conclusive by way of authority, that they are entitled to much less weight than the judgments of those courts which consider themselves bound by legal adjudications.” Now this is a very pregnant proposition ; and, if well founded, is as grave as it is disparaging. Without hazarding the assertion, it would imply that this court does not consider itself bound by legal adjudications ; an implication as unjust to the character of this court, as it is believed to be wholly unsustained by any thing to be found either in the declarations or the acts of the court as such. On the contrary, it is confidently believed that our books of reports will furnish abundant evidence that this court has, in general, adhered to acknowledged authority with as much steadiness and uniformity as others, and much more so than could have been reasonably anticipated from its constitutional organization. Few cases can be found where, by its decisions, it has either overturned or disregarded the well settled principles and rules of law.
But it is said that this court has not always followed its own decisions. What other court in any country has done so 1 The supreme court of our own state does not certainly form an exception to the general truth in .this respect. Even the history *326 of the leading principle of the very case now under review here, furnishes abundant evidence that neither in England, nor in this country, have the courts invariably held the same doctrine upon the same subject. It is, however, confidently believed that this court, in its adjudications, has not been wanting in a due and just respect for acknowledged authority, in a uniform and proper regard for its own decisions, and a. careful and strict adherence to well established law.
But the author of this novel doctrine, in the case in which it is put forth, after denying generally the authority of the decisions of this court, has permitted himself to say: “ But when, as in Smith & Hoe v. Acker, the court has professedly departed from the whole course of decisions,’ the judgment is entitled to no weight at all.” To seize upon isolated and casual expressions of individual members of the court, and apply tnem, as general and governing principles, even to the individual opinions of such members, is of more than questionable fairness; but to appropriate them generally and say that “ the court has professedly departed from the whole course of decisions,” is as incorrect in point of fact, as it is grossly unjust to this court. In point of fact, it may be asked when and where did this court, as such, ever make such a profession 1 The injustice of the remark will be fully illustrated by a reference to the practice of this court, in forming and pronouncing its decisions. The court hears an argument in a given case. It does not afterwards meet for the purpose of consultation or deliberation; but each member, separately and apart, examines the case, and prepares for its decision. The court then comes together ; the opinions of the members are delivered ; and the court then unites in a general conclusion, either of affirmance or reversal of the judgment or decree reviewed. For this conclusion, and for this only, is the court, as such, responsible ; unless, indeed—-which is very rarely the case—the court proceed by resolution, to declare the grounds upon which that general conclusion rests, Different minds arrive at this conclusion by different processes *327 of reasoning ; but no member is answerable either for the reasons or the language of any other member. Each is responsible only for his own, an'd for the general conclusions and resolutions in which, by his express votes, he may have united. The gross injustice, therefore, as well as inaccuracy in point of fact, of this statement as to what this court professed in the case of Smith & Hoe v. Acker, is too manifest to require further illustration or remark.
Nor are the unsoundness of the principle, the tendency to disorganization, and the manifest injustice of this new doctrine, at all relieved by the general tone and language in which it is put forth. They all constitute one whole of unmixed character, and of deep and unfeigned regret; calculated only to bring our judiciary system into distrust with our own citizens, and discredit with the world ; and thus to impair the usefulness, and ultimately break down this most important institution of the state. To this end I know the distinguished author of this new and alarming doctrine would not willingly contribute ; nor would he willingly have his name associated with such a result. I would, therefore, invoke the aid of his talents and the weight of his high personal and official character, rather in building up our judiciary system, in sustaining and strengthening its separate parts, and in promoting the harmony of the whole 5 and thus commending it to the increased confidence of our own citizens, and to the greater respect of the world.
In regard to the case in hand, while I concur generally in the opinion of the supreme court, there is, among others, a point, and" that a vital one, on which I differ altogether from that opinion. The circuit judge, in charging the jury at the trial, read to them the section of the statute applicable to the case, and submitted it to their consideration. If the judge had stopped here, he would have been considered as having adopted the statute as a part of his charge, or as having charged the jury in the very language of the statute. This would have been unexceptionable. But when he subsequently charged *328 that “ if the jury found otherwise,” (that is, that the assignment had not been accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things assigned,) “ if they found that the property remained in the possession of Norton until levied upon under the said execution, then they must enquire whether there were any good reasons shown by the plaintiff, which they could approve, why there had not been an immediate delivery, and an actual and continued change of possession,” he misdirected the jury on an important point. Instead of directing them to the only enquiry in that case expressly prescribed by the statute, he led their minds to one not in terms embraced in its provisions, and calculated to present to them a false issue. This was error. Instead of the enquiry thus directed by the circuit judge, he should have charged the jury that “if they. found the property remained in the possession of Norton until levied upon under the said execution, then they must enquire” whether it had been made to appear, on the part of those claiming under the assignment, that the same was made in good faith, and without any intent to defraud creditors or subsequent purchasers. This would have been in the language and spirit of the statute. But the direction of the circuit judge gave an artificial, restricted, and erroneous interpretation to the statute 5 an interpretation not in conformity, with the law as finally settled by this court, and well calculated to mislead the jury. Therefore, although the circuit judge did submit the case to the jury, in pursuance of the statute, yet he did so under an erroneous direction as to the law, which may be fairly supposed to have misguided the jury, and to have led them to wrong conclusions. This was error; and a verdict thus obtained should have been set aside and a new trial granted.
Without going into a particular examination of the other points presented in the case, I am of opinion that the charge of the circuit judge was wrong in the important respect above indicated, and that the judgment of the supreme court affirming the same was of. course erroneous, and should be re *329 versed, and a venire de novo awarded, with costs to abide the result.
Root, senator, also delivered a written opinion in favor of reversing the judgment of the supreme court, and Paige, sena tor, an oral opinion in favor of affirming the judgment.
On the question being put, a Shall this judgment be reversed the members of the court voted as follows :
For reversal: The President, and Senators Bockee, Dickinson, Dixon, FrAnklin, Hard, Hawkins, Hopkins, Hunt, Johnson, Nicholas, Platt, Rhoades, Root, Ruger, Varney, and Works—17.
For affirmance : The Chancellor, and Senators Bartlit, Corning, Foster, Paige, Scott and Varían—7.
Judgment reversed.

 See Bissell v. Hopkins, (3 Cowen, 166,) and the cases there cited by Talcott and Hopkins, arguendo.